**UNITED STATES and Jeffrey L. Marvin, Special Agent, Internal Revenue Service, Petitioners-Appellees, Cross-Appellants,**

v.

**Betty J. CAMPBELL, a/k/a Pam Holliday, Respondent-Appellant, Cross-Appellee.**

**Nos. 75–1280, 75–1321.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Oct. 14, 1975.

Rehearing and Rehearing En Banc Nov. 19, 1975.

Charles L. Riter, Rapid City, S. D., for Betty J. Campbell.

Daniel F. Ross, Atty., Tax Div., Dept. of Justice, Washington, D. C., for the United States.

Before MATTHES, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The principal issue on this appeal is whether section 7602(2) of the Internal Revenue Code of 1954 (26 U.S.C. § 7602(2)) authorizes the Commissioner of Internal Revenue to compel a taxpayer to give exemplars of her handwriting.

This is an appeal and cross-appeal from the order of the district court [1] enforcing a summons issued by a special agent of the Internal Revenue Service to Betty J. Campbell, a/k/a Pam Holliday, respondent-appellant. The summons required taxpayer to provide handwriting exemplars. The government cross-appeals from that portion of the order limiting the exemplars to one copy of the requested example.

The record discloses that Special Agent Marvin was engaged in an investigation to determine the taxpayer's correct income tax liabilities during the years 1968–72, inclusive. Taxpayer advised the special agent that she never

---

1. The Honorable Andrew W. Bogue, United States District Judge, District of South Dakota.

kept any books or records with respect to income tax matters. Upon being summoned to produce records of her business, she declined on Fifth Amendment grounds. The Ogden Service Center of IRS, which services South Dakota, advised the special agent that there was no record of income tax returns being filed in taxpayer's name or under her social security account number for the years under investigation.

Upon appropriate inquiry by the special agent, taxpayer's bank responded with copies of some 200 money orders purchased in 34 names, including known aliases of the taxpayer, which several bank employees thought had been purchased by or on behalf of taxpayer. The bank employees could not positively identify taxpayer as the purchaser of the money orders.

Special Agent Marvin, after consultation with an examiner of questioned documents, then issued and served the summons at issue for handwriting exemplars to be used in making a handwriting analysis for the purpose of determining whether taxpayer was the purchaser or remitter who had signed the numerous money orders. Taxpayer appeared in response to the summons but refused to give the requested exemplars. The government then brought the instant action pursuant to Title 26, U.S.C., § 7604, to enforce the summons.

Taxpayer urges that the district court erred in enforcing the summons. She specifically contends that section 7602(2) does not authorize the Commissioner to compel the taxpayer to give exemplars of her handwriting. The statute provides in part as follows:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax * * *, the Secretary or his delegate is authorized—

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

> (2) To summon the person liable for tax or required to perform the act, * * * to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, * * * as may be relevant or material to such inquiry.

It is the government's position that when Congress used the broad general phrase "other data," it intended to empower the taxing authorities to summon any otherwise permissible material required by them to carry out their investigation, and this includes handwriting exemplars.

Taxpayer points out that the summons provisions in the Internal Revenue Code of 1939 and predecessor statutes and cases thereunder dealt with the application of the summons only as to documents such as books, papers, records, memoranda, notes, and the like.[2] Former statutes did not use the terminology "other data" but rather used the term "memoranda." The latter contemplates matters already in existence. Further, the legislative history of section 7602 of the I.R.C. of 1954, which replaced "memoranda" with "other data," indicates that no change was contemplated. The Committee Reports in both the House and Senate state: "This section contains no material change from existing law." H.R.Rep.No.1337, 83rd Cong., 2d Sess., p. A436 (U.S.Code Cong. & Admin.News (1954), pp. 4017, 4584); S.Rep.No.1622, 83rd Cong., 2d Sess., p. 617 (U.S.Code Cong. & Admin.News (1954), pp. 4621, 5268).

Taxpayer thus argues that in order for the summoned data to be produced or delivered it must be an item in existence. *See Brownson, supra,* 32 F.2d at 847–48;

---

**2.** *See* Int.Rev.Code of 1939, § 3614; Rev.Act of 1928, § 618 (45 Stat. 878). For review of legislative history of the latter, *see Brownson v. United States,* 32 F.2d 844, 846 (8th Cir. 1929).

*See also* Internal Revenue Act of 1864, § 14 (13 Stat. 226); *In re Lippman,* 15 Fed.Cas. 572 (No. 8,382) (S.D.N.Y.1868).

*Chapman v. Goodman,* 219 F.2d 802, 806 (9th Cir. 1955).

We believe taxpayer construes the statute too narrowly. The definition of "data" includes "detailed information of any kind." *See Webster's Third New Dictionary Unabridged* (1971). It is significant that the Internal Revenue Code of 1954, regardless of the Committee Reports that the "Section [in question] contains no material change from existing law," nevertheless used broader terminology. More important, it must be recognized that "§ 7601 [26 U.S.C. 7601] gives the Internal Revenue Service a broad mandate to investigate and audit 'persons who may be liable' for taxes" and section 7602 provides the investigative authority to do so. *United States v. Bisceglia,* 420 U.S. 141, 145–46, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975).

The authority to investigate is subject to abuse, but the taxpayer is not without protection. The summons can be enforced only by the courts. 26 U.S.C. § 7604(b); *Bisceglia, supra,* 420 U.S. at 146, 95 S.Ct. 915. The enforcement action is an adversary proceeding which affords a judicial determination of challenges to the summons. The witness may challenge the summons on any appropriate ground. Enforcement orders are appealable, and stay orders pending appeal may be entered to protect the witness while the summons is being tested. *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Here the summons was properly issued in aid of an investigation. It was issued in good faith and prior to a recommendation for criminal prosecution. *Donaldson v. United States,* 400 U.S. 517, 536, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The possibility of criminal consequences does not bar issuance of the summons. *Couch v. United States,* 409 U.S. 322, 326, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

We have noted that "[t]he power of the IRS to investigate the records and affairs of taxpayers has long been characterized as an inquisitorial power, analogous to that of a grand jury, and one which should be liberally construed." *United States v. Matras,* 487 F.2d 1271, 1274 (8th Cir. 1973) (citations omitted). But we have not hesitated to affirm the district court's refusal to enforce a summons seeking information found to be irrelevant. *Id.*

■ Handwriting is a physical characteristic of a person's script, *United States v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); handwriting exemplars are not testimonial or communicative matters but instead are an "identifying physical characteristic" of the person. *Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

Here the relevance and materiality of the information sought by the summons are not questioned. Obviously, the handwriting exemplars of letters and numerals in script and in print are needed to compare with the writing on the money orders and cashier's checks believed to have been purchased by taxpayer. Identification of the various items with taxpayer can be expected to reveal the existence of funds available to taxpayer and the existence of deductible expenses, both of which should aid in reflecting taxpayer's correct tax liabilities during the years in question.

■ We hold that under the circumstances existing in this case the district court did not err in requiring the taxpayer to furnish handwriting exemplars. The Commissioner's statutory authority to summon "other data" under Title 26, U.S.C., § 7602(2), includes the authority to require the taxpayer to give exemplars of her handwriting.

■ · Although not raised in her briefs filed in this court, taxpayer in oral argument apparently challenges for the first time enforcement of the summons as being in violation of the Fourth Amendment proscription against unreasonable

searches and seizures.[3] F.R.A.P. 28(a) requires that the brief of appellant shall contain: "(2) A statement of issues presented for review." We have held: "Questions not raised, briefed nor argued will ordinarily be given no consideration by an appellate court." *Smith v. American Guild of Variety Artists*, 368 F.2d 511, 514 (8th Cir. 1966) (citations omitted). "Proper judicial administration requires that error relied upon should be asserted in appellant's opening brief. * * * New issues cannot ordinarily be raised by reply brief." *Mississippi River Corp. v. F.T.C.*, 454 F.2d 1083, 1093 (8th Cir. 1972). However, in *Harris v. Smith*, 372 F.2d 806, 815 (8th Cir. 1967), we made an exception where substantial rights of the parties were affected.

In any event, we find taxpayer's contention with respect to the Fourth Amendment to be without merit. The Supreme Court has specifically ruled that a requirement to produce a handwriting exemplar pursuant to a subpoena "violated no legitimate Fourth Amendment interest." *United States v. Mara, supra*, 410 U.S. at 22, 93 S.Ct. at 776. *Compare United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), where the Court held that compulsory production of voice exemplars from a grand jury witness was not a violation of the Fourth Amendment. The Court found that neither the summons to appear before the grand jury nor its directive to make a voice recording infringed upon any interest protected by the Fourth Amendment. *Cf. United States v. Harris*, 453 F.2d 1317 (8th Cir. 1972).

## CROSS–APPEAL

■ The government appeals from that part of the order requiring the taxpayer to complete only one copy of the requested handwriting in print and in longhand, once with her left hand and once with her right hand. The government had requested ten copies. Its expert had testified that ten copies were needed for adequate comparison. Taxpayer urges that ten copies are unnecessary and burdensome. In oral argument the government stated that it has since been determined that exemplars with the left hand are not needed. We have examined the exemplars requested and, in view of the nature of the questioned documents and the testimony of the handwriting expert, we have concluded that taxpayer should be required to furnish ten copies of the exemplars with her right hand.

Affirmed on taxpayer's appeal and remanded on the government's cross-appeal for action in accordance with this opinion.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent.

In my view, Section 7602(2) of the Internal Revenue Code of 1954 (26 U.S.C. § 7602(2)) should be strictly construed, *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Jones v. Securities and Exch. Com.*, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 (1936), and the Internal Revenue Service denied the right to obtain handwriting exemplars by subpoena.

It is well established that compelling a person to execute a handwriting exemplar is a search and seizure within the meaning of the Fourth Amendment. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *United States v. Harris*, 453 F.2d 1317 (8th Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1973). The investigatory powers of the Internal Revenue Service are clearly subordinate to the Fourth Amendment. *See Lord v. Kelley*,

---

**3.** The designated record indicates that in the district court taxpayer claimed a violation of the Fifth Amendment which was not raised on appeal. This claim is without merit. *See Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

334 F.2d 742 (1st Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

The government's argument that the Internal Revenue Service's investigatory powers under Section 7602 should be interpreted to include the power to compel execution of handwriting exemplars because such power has been granted to grand juries, *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), is unconvincing. The Internal Revenue Service has a different function than a grand jury. There is no direct supervision of an Internal Revenue Service investigation by a judge or other neutral judicial officer as there is of a grand jury. The Internal Revenue Service, upon finding a violation of the law, is the same body which undertakes the prosecution of the taxpayer involved. Those charged with investigative and prosecutorial duties should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks. *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

If the Internal Revenue Service desires the right to require individual taxpayers to give handwriting exemplars, they should go to Congress and ask for this authority. The courts can then determine the circumstances under which the right can be exercised in a constitutional manner.