In re Ronnie Palmer.

Ronnie PALMER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1013.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1976.

Decided Feb. 19, 1976.

Robert L. Officer, Clayton, Mo., filed brief for appellant.

Donald J. Stohr, U. S. Atty., and David D. Noce, Asst. U. S. Atty., St. Louis, Mo., filed brief for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

PER CURIAM.

The central issue raised in this appeal is whether a grand jury's request for

---

handwriting exemplars is enforceable by the district court's contempt power authorized by 28 U.S.C. § 1826(a) (1970).

Ronnie Palmer appeals from his conviction for contempt in the district court[1] following his refusal to furnish handwriting exemplars to a federal grand jury. Appellant was committed to custody "for the life of the Grand Jury * * * or until such time as he purges himself of this contempt," but in no event for longer than eighteen months. We affirm.

On December 10, 1975, during the time Ronnie Palmer was an Illinois state prisoner, he was brought before a grand jury in St. Louis, Missouri, for the purpose of obtaining exemplars of his handwriting. Joseph Fox, Special Agent for the Federal Bureau of Investigation, had previously testified before the grand jury about his investigation of a fraudulent check cashing scheme violative of 18 U.S.C. § 2314 (1970). Apparently, the scheme involved the bank account of Edward and Genee Anton, and the testimony of Agent Fox indicated that Edward Anton, Genee Anton and Ronnie Palmer were the same person. The purpose of requiring the handwriting exemplars, therefore, was to connect Palmer with the fraudulent check cashing scheme. The grand jury issued an order requiring the production of the exemplars, but appellant refused.[2] Palmer also indicated that he would not comply with the district court's order commanding him to obey the grand jury's order. Counsel was then appointed to represent appellant. After the district court issued an order requiring Palmer to show cause why he should not be held in contempt, Palmer responded that he would refuse compliance on the basis of his Fifth Amendment privilege against self-incrimination. On December 23, 1975, a hearing was held in which counsel for appellant and the government stipulated to the foregoing facts. Upon this record, the district court found appellant to be in contempt. *See* 28 U.S.C. § 1826(a) (1970).

The principal issue before us is whether the request for handwriting exemplars is enforceable pursuant to the authority given to the district court by the recalcitrant witness statute, 28 U.S.C. § 1826(a) (1970). Appellant contends that the statute should be construed as relating only to the compulsion of oral testimony and the production of non-testimonial evidence which is in existence and in the witnesses' possession.

We believe appellant construes the statute too narrowly. Prior to the enactment of section 1826, federal courts had inherent power to compel the production of exemplars before a grand jury through the civil contempt power. *See United States v. Doe (Devlin),* 405 F.2d 436, 437–38 (2d Cir. 1968). For example, in *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), the Court stated:

There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt. And it is essential that courts be able to compel the appearance and testimony of witnesses. A grand jury subpoena must command the same respect.

*Id.* at 370, 86 S.Ct. at 1535 (citations omitted). Furthermore, federal courts, after the enactment of section 1826, have consistently approved civil contempt adjudications to compel the provision of handwriting exemplars. *See, e. g., United States v. Mara,* 410 U.S. 19, 21–22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Doe (Schwartz),* 457 F.2d 895 (2d Cir. 1972), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973).

The legislative history of the recalcitrant witness statute also supports a broad construction of its language. The legislative history of 28 U.S.C. § 1826 (1970) indicates that it was "intended to codify present civil contempt practice with respect to recalcitrant witnesses in

---

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

2. Palmer was specifically advised of his right against self-incrimination.

Federal grand jury and court proceedings," which included the power to require production of handwriting exemplars.[3] H.R.Rep.No.91–1549, 91st Cong., 2d Sess., 2 U.S.Code Cong. & Admin. News, p. 4008 (1970).

We are unpersuaded by appellant's argument that the recalcitrant witness statute should only apply to testimony or materials in existence. *Cf. United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Campbell,* 524 F.2d 604, 606–08 (8th Cir. 1975). The statute specifically states:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information.

28 U.S.C. § 1826(a) (1970). The word "provide," utilized in section 1826(a), may be defined as "to make." *See* BLACK'S LAW DICTIONARY 1388 (4th ed. 1968). A reasonable interpretation of the specific phrases "other information" and "other material" would encompass handwriting exemplars. *See In re Lopreato,* 511 F.2d 1150, 1153–54 (1st Cir. 1975). We conclude that the language of the recalcitrant witness statute is sufficiently broad to include handwriting exemplars.

Appellant also asserts that the compulsion to produce the handwriting exemplars is tantamount to forcing him to testify against himself and is, therefore, violative of the Fifth Amendment. *Cf. United States v. Mara,* 410 U.S. 19, 22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). This contention is based on appellant's additional assertion that the requested handwriting exemplars constitute the sole evidence with which he could be linked to the subject of the grand jury's investigation. It is clear, however, that handwriting exemplars are not communicative testimony protected by the Fifth Amendment. *See Gilbert v. California,* 388 U.S. 263, 265–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Campbell, supra,* 524 F.2d at 607. The district court is empowered to require exemplars that will not be taken in a communicative form and that will embody only the physical characteristics of appellant's handwriting.

Finally, we observe that compelling the production of handwriting exemplars before federal grand juries is not violative of the Fourth Amendment.[4] *United States v. Mara,* 410 U.S. 19, 21–22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). *Cf. United States v. Dionisio,* 410 U.S. 1, 5–7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). *See also United States v. Campbell,* 524 F.2d 604, 608 (8th Cir. 1975).

Affirmed.

3. The House of Representatives Judiciary Committee stated in its report on 28 U.S.C. § 1826 that:

> "Other information" is explicitly made to include books, papers, documents, records, recordings, and other materials. See Title II, proposed section 6001(2) above.

H.R.Rep.No.91–1549, 91st Cong., 2d Sess., 2 U.S.Code Cong. & Admin.News, p. 4022 (1970). Proposed section 6001(2)

> defines "other information" to include books, papers, and other materials. The phrase is used in contradistinction to oral testimony. It would include, for example,

electronically stored information or computer tapes. Its scope is intended to be comprehensive, including all information given as testimony, but not orally.
*Id.* at p. 4017.

4. Appellant states that the production of the exemplars in the instant case should not have been required without a showing of reasonable cause. The government, however, was under no obligation to make a preliminary showing of reasonableness. *See United States v. Mara,* 410 U.S. 19, 22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).