UNITED STATES of America, Appellee,

v.

Salvatore Ross AGRUSA, Appellant.

No. 76–1036.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1976.

Decided July 6, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 26, 1976.

Sloan R. Wilson, Kansas City, Mo., for appellant.

Philip J. Adams, Jr., U. S. Dept. of Justice, Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and WEBSTER, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Agrusa appeals his conviction of engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1). The case was tried to the court,[1] trial by jury having been waived.[2] Each of the contentions asserted by defendant on appeal concerns certain wire and oral communications which were intercepted by the Government in purported compliance with the provisions of Title III of the Omnibus Crime Control and Safe

Streets Act of 1968, 18 U.S.C. §§ 2510–2520, and other applicable law. We review at the outset the procedures leading to, and the nature of, the interceptions.

On February 28, 1974, the Government submitted a sworn application to Judge Hunter[3] seeking authority to intercept wire and oral communications of defendant and others at defendant's place of business in Independence, Missouri. The application asserted there was probable cause to believe that violations of 18 U.S.C. §§ 659, 2315 and 371[4] had occurred and that the other requisites for the desired court order had been satisfied. Accompanying the application were an authorization for the application, dated February 27, 1974, and signed by then Attorney General William B. Saxbe, and an affidavit by an FBI agent, hereinafter discussed, setting forth the results of investigations to that date and purportedly establishing the factual basis upon which the application was predicated.

In an order dated February 28, 1974, Judge Hunter made specific findings that (1) probable cause existed to believe that defendant and others had violated the provisions of 18 U.S.C. §§ 659, 2315 and 371, (2) probable cause existed to believe that particular wire and oral communications concerning the alleged offenses could be obtained through the desired interceptions, and (3) normal investigative procedures had either been tried without success and reasonably appeared unlikely to succeed if continued or reasonably appeared unlikely to succeed if tried. The order authorized the Government to intercept wire and oral communications at defendant's place of business until such time as specified material facts were discovered or for a period of twenty days from the date of the order, whichever was shorter, provided that all

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. The validity of the waiver is not contested.

3. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

4. §§ 659 and 2315 concern the theft, possession, receipt and sale of goods stolen from interstate commerce. § 371 is the conspiracy statute.

interceptions were executed as soon as practicable and that they were conducted so as to minimize the interception of communications not otherwise permitted under Title III. The order also required the Government to provide progress reports to the court on three specified days within the maximum of twenty days authorized. Additionally, and of considerable importance to this appeal, the order authorized the Government "to make secret and, if necessary, forcible entry any time of day or night which is least likely to jeopardize the security of this investigation, upon the premises . . ., in order to install and subsequently remove whatever electronic equipment is necessary to conduct the interception of oral communications in the business office of said premises."

Pursuant to this order, the parties stipulated, "the bug . . . was placed in the defendant's body shop, by a Government agent, without the defendant's permission, after regular business hours and at a time when the body shop was closed and locked."

Subsequently, after the interception of communications tending to implicate the defendant in the firearms violation of which he was convicted below, the Government sought from the district court a supplemental order authorizing the use of these intercepted communications before the grand jury and at the trial in this case. This supplemental order, which the court entered, was required under the provisions of 18 U.S.C. § 2517 since the firearms offense is not among the offenses listed in 18 U.S.C. § 2516 for which wire and oral interceptions are permitted in the first instance.[5]

The district court, without substantial comment, denied a motion to suppress, and transcripts of the intercepted communications were introduced in evidence at trial. The court, in an unreported memorandum opinion, found the defendant guilty. Defendant was sentenced to a term of four

years, to be served concurrently with a prior sentence in another case.

On appeal defendant's contentions relate in each instance to the validity of the interceptions. We treat his contentions in the following order:

I. The Government's application for authorization to intercept did not state probable cause for the issuance of the order nor did it comply with the particularity requirements of Title III.

II. The Government's application for authorization to intercept did not adequately explain why other investigative procedures could not have been employed, as required by Title III.

III. The court order authorizing the interceptions did not comply with the minimization requirements of Title III.

IV. The court's supplemental order under 18 U.S.C. § 2517 was improper.

V. The district court could not, consistently with the Fourth Amendment and other applicable law, authorize a forcible and surreptitious intrusion into the defendant's place of business for the purpose of installing the electronic surveillance device.

VI. The Fifth Amendment proscribes the use of defendant's own intercepted statements against him.

We reject each of the above contentions and affirm the conviction.

### I–IV

▆▆▆ Defendant initially asserts that the Government's application did not establish probable cause under the Fourth Amendment and did not comply with the particularity requirement of 18 U.S.C. § 2518(1)(b)(i).[6] The contention is without

---

5. Neither party requested that this supplemental order be included in the designated record on appeal. Defendant concedes, however, that it was in fact entered. Appellant's brief at 3.

6. " . . . Each application shall include the following information: . . . (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, in-

merit. The application was supported by a nineteen page affidavit exhaustively relating information supplied by five informants, each of whom but one had a prior history of reliability. The information, which included numerous specific instances, some corroborated in various details, revealed a pattern of dealing in stolen goods which can only be described as extensive. It tended to link defendant with organized crime in Kansas City. In part, it raised serious question whether defendant was conducting a legitimate business at all. In sum, it established probable cause to believe that violations of 18 U.S.C. §§ 659, 2315, and 371 had occurred, were occurring, or would occur, and it complied with § 2518(1)(b)(i). Defendant's contention that the affidavit contained hearsay is similarly unavailing. Where, as here, there is a substantial basis for crediting the hearsay, it will not vitiate the finding of probable cause. *Jones v. United States,* 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Kleve,* 465 F.2d 187 (8th Cir. 1972). We have carefully reviewed the affidavit and conclude that it amply complies with the Fourth Amendment and the statute.

■ Defendant next contends that the affidavit failed to contain "a full and complete statement as to whether or not other investigative procedures [had] been tried and failed or why they reasonably appear[ed] to be unlikely to succeed if tried or to be too dangerous", as required by 18 U.S.C. § 2518(1)(c). *See also* 18 U.S.C. § 2518(3)(c).[7] Aside from the fact that defendant did not raise this issue until his reply brief, *see United States v. Campbell,* 524 F.2d 604, 608 (8th Cir. 1975), we fully agree with the district court that the affidavit contained the required statement.

The affidavit recited, *inter alia,* that the Government's informants were unwilling to testify for fear of reprisals against them and their families, that the Government had been and would be unable to obtain additional details of the illicit transactions which would be essential to a successful prosecution because the defendant and his collaborators possessed longstanding expertise in avoiding apprehension, that conventional searches and seizures would not yield such essential information as whether certain goods were stolen (since shippers and retailers frequently do not keep detailed records of their merchandise) or whether they were stolen from interstate commerce, and that infiltration was a dangerous and likely unsuccessful investigative technique because defendant was a knowledgeable member of the Kansas City criminal community. We recently discussed 18 U.S.C. §§ 2518(1)(c) and (3)(c) in *United States v. Daly,* 535 F.2d 434, 437–39 (8th Cir. 1976). Although we continue to recognize Congress' concern that wire and oral surveillance be restricted to situations where normal investigative techniques are unlikely to succeed or too dangerous, we conclude here, as we did there, that the district court properly found that the alternative means were inadequate.

■ Defendant's third contention asserts that the Government did not comply with one of the minimization provisions of 18 U.S.C. § 2518(7).[8] The Government correctly observes that the application of § 2518(7) is limited to situations where a specified emergency exists and the Government seeks to intercept for a brief period without prior court authorization. That section has no application here. However, we treat defendant's contention as in substance rais-

---

cluding (i) details as to the particular offense that has been, is being, or is about to be committed . . .."

**7.** "Upon such application the judge may enter an ex parte order . . . if the judge determines on the basis of the facts submitted by the applicant that— . . . (c) normal inves-

tigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

**8.** " . . . In the absence of an order, such interception shall immediately terminate when the communication sought is obtained . .."

ing an objection under 18 U.S.C. § 2518(5).[9] So treated, the contention is rejected. The court order, summarized above, complied with the letter and spirit of § 2518(5). In all important particulars, except in limiting the maximum authorized time to twenty days, rather than the maximum of thirty days allowed under the statute, the order is in part a virtual reproduction of § 2518(5). The order does circumscribe within the "authorized objective" of the surveillance activity the manner in which the illegal thefts from interstate commerce occurred, the identity of confederates, their places of operation, and the "full nature" of the conspiracy involved. Given the nature of the offenses upon which the application and order were based, however, this was not unreasonable under the circumstances. *See United States v. Daly,* 535 F.2d 437, 440–42 (8th Cir. 1976). Aside from an unsupported assertion that "it is obvious that [the minimization steps required under § 2518(7) were] not done in this case" and an irrelevant reference to the fact that the Government procured a § 2517 order, defendant does not contend that the minimization requirements of the order were not complied with. We conclude that both the court order and the Government activity were appropriately minimized under § 2518(5).

Defendant's fourth contention concerns the order which the district court entered pursuant to 18 U.S.C. § 2517.[10] He complains that "Judge Hunter never authorized the interception of such communications concerning the specific charge of firearms, but rather the general charges of stealing and fencing goods stolen from interstate shipments." This observation is correct but unavailing. Section 2517 allows, and requires, a separate order permitting the use of evidence derived from otherwise legal interceptions at criminal trials on charges other than those on which the original authorization was based. *See United States v. Cox,* 449 F.2d 679 (10th Cir. 1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972). Defendant adds that § 2517 should be read in light of the minimization requirements of Title III. Interpreting this to mean that evidence derived from surveillance activity which is not properly minimized cannot be the subject of a § 2517 order, we again find defendant's observation well-taken but wide of the mark. The activity here was properly minimized, and the evidence was the proper subject of a § 2517 order.

V

As noted above, it was stipulated that, pursuant to express court authorization,[11] "the bug . . . was placed in

9. "No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. . . . Every order . . . shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days."

10. 18 U.S.C. § 2517(3): "Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any

court of the United States or of any State or in any Federal or State grand jury proceeding."

18 U.S.C. § 2517(5): "When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, . . . may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable."

11. We are not concerned with the fact that the same document served to authorize both the interceptions and the breaking or that the document was not in terms denominated a "warrant." The document in this case, styled simply "order authorizing the interception of wire

the defendant's body shop, by a Government agent, without the defendant's permission, after regular business hours and at a time when the body shop was closed and locked." Defendant submits that this activity, with or without court approval, is neither permissible under the Fourth Amendment nor authorized under applicable statutory and common law.

 Defendant's claims, both constitutional and nonconstitutional, focus alternatively upon the facts that the intrusion was (in his characterization) "trespassory" and that it was forcible and surreptitious. The claim that the intrusion was trespassory and therefore illegal is, standing alone, without merit.[12] The claim that it was forcible and surreptitious, however, raises substantial issues which are, so far as we are aware, ones of first impression in any court.

We hold that, on the particular facts of this case, the governmental activity was not improper.[13]

## A

We address the constitutional issue first. In our view the sequence of events whereby the Government broke and entered the premises, installed the surveillance device, and subsequently intercepted the oral communications constituted a search and seizure, composed of two relatively distinct aspects, each entitled to some measure of protection under the Fourth Amendment. The first aspect of this search and seizure, the breaking and entering, is the subject of our inquiry. The Fourth Amendment is implicated because of the reasonable expectation of privacy, which, to some extent, attends business premises. *Mancusi v. De-Forte,* 392 U.S. 364, 367–70, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).[14]

The leading case on the constitutionality of an unannounced breaking and entering is *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). In that case officers had probable cause to believe that Ker was

and oral communications", plainly represented the determination of a United States judge that there was probable cause to believe that specified crimes had been, were being, or would be committed and sufficient reason for the Government both to break and enter and to intercept. This is precisely and, in respects here material, all that the Fourth Amendment and sound reason require.

**12.** Defendant's reliance on *Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), is misplaced. The fact that the intrusion in that case was accomplished without a warrant was as critical to the result as was the fact that a "trespass" had occurred. See the Opinion of the Court at 511–12, 81 S.Ct. 679 and the opinion of Mr. Justice Douglas, 365 U.S. at 513, 81 S.Ct. 679. The "trespassory" aspect of the intrusion occupied the center of the Court's attention only because it had not yet been recognized that conversations were themselves entitled to protection under the Fourth Amendment, and the "trespass" finding was thus essential to invoking the Fourth Amendment in the first instance. *Silverman* plainly laid down no rule that "trespassory" intrusions could not occur *with* a warrant. Indeed, execution of a conventional search warrant typically entails a "trespass."

We do not suggest, of course, that the protection of the Fourth Amendment is inevitably tied to the niceties of local trespass law. *Silverman* itself, at 511, 81 S.Ct. 679, ruled to the contrary. *Accord: Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 393–94, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)

**13.** We do not decide what result obtains if the officers act without express court authorization to break and enter (although with court authorization to intercept). We are certain, however, that the resolution becomes much more difficult in that event, and we commend the procedures employed here to law enforcement officials in the future.

**14.** The second aspect of the search and seizure, the interceptions themselves, is entitled to protection under the Fourth Amendment because of the justifiable reliance upon the privacy of the conversations intercepted. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, our conclusion above that Title III was in all respects complied with resolves that Fourth Amendment standards were, with respect to the interceptions themselves, satisfied. The constitutionality of Title III is well-established. *United States v. Kirk,* 534 F.2d 1262, 1273 (8th Cir. 1976) and cases there cited.

illegally in possession of marijuana, and they suspected that an announced entry would provoke the destruction of evidence. Acting without a warrant, the officers obtained a passkey to Ker's apartment, entered the apartment without knock or announcement, arrested Ker, and conducted a search incident to the arrest. The fruits of the search were introduced at trial, and Ker was convicted. The Supreme Court divided sharply, but a majority of the Justices affirmed the conviction. Mr. Justice Clark, writing for four Justices, assumed that the use of the passkey was the equivalent of a breaking.[15] Noting, however, that applicable California law allowed unannounced forcible intrusions in exigent circumstances, he agreed that "justification for the officers' failure to give notice [was] uniquely present", id. at 40, 83 S.Ct. at 1633, alluding both to the possible destruction of evidence and to the possibility that Ker was expecting the police when they arrived. He concluded that the method of entry, sanctioned by the law of California, was not unreasonable under the Fourth Amendment. Id. 374 U.S. at 41, 83 S.Ct. 1623. Mr. Justice Harlan concurred in the affirmance, disagreeing with the view of the eight other Justices that the standards were the same under the Fourth and Fourteenth Amendments, and finding no fundamental unfairness. Id. at 44–46, 83 S.Ct. 1623. Mr. Justice Brennan, writing for four Justices, dissented. In his view, an unannounced intrusion into a private home is a violation of the Fourth Amendment unless one of three exceptions applies, id. 374 U.S. at 47, 83 S.Ct. 1623, none of which did apply in

Ker, and, we add, none of which do apply in this appeal.

Even if we assume that Mr. Justice Brennan's opinion would require a reversal here, and it is by no means clear that it would,[16] Ker is dispositive of the constitutional issue before us. Despite the absence of a majority opinion in Ker, a majority of the Justices did conclude that there was no constitutionally invalid search or seizure. The same must necessarily be true here. The justification for dispensing with the normal announcement requirement is certainly no less "uniquely present" here than it was in Ker. For whatever the likelihood might have been that Ker would have destroyed evidence had an announcement preceded the officers' entry, it is a virtual certainty that the defendant here would have avoided any incriminating statements had he been told in advance that his conversations would be intercepted. In an interception context, an announcement requirement can only be labeled as utterly self-defeating.

 Furthermore, while the exigencies here equal or surpass those in Ker, the privacy interest, and the commensurate Fourth Amendment protection afforded it, though still substantial, are less substantial than they were in Ker. Business premises, while entitled to protection under the Fourth Amendment, are not entitled to the same protection which is afforded a home. See v. Seattle, 387 U.S. 541, 545–46, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Also, premises which are vacant at the time searched are, in respects here material, less protected constitutionally than are occupied premises. What authority there is holds that unan-

---

15. At least in a statutory context, this assumption was converted to holding in Sabbath v. United States, 391 U.S. 585, 589–90, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

16. Although the exceptions listed by Mr. Justice Brennan in Ker are stated to be exhaustive, they are specifically in reference to an intrusion into a private home, and the opinion draws heavily upon the historical sanctity of the private home. No home is involved in this appeal.

In addition, Ker concerned an arrest rather than a search. Understandably, none of Mr. Justice Brennan's exceptions envisions premises which are unoccupied at the time of the

intrusion. When officers are aware that premises are vacant, there is no reason for them to break and enter in order to execute an arrest and therefore no need for an additional exception to the rule against unannounced intrusions. The same, however, would not necessarily be true with respect to a search. See United States v. Watson, 307 F.Supp. 173, 176 n. 2 (D.D.C.1969). See also Rice v. Wolff, 513 F.2d 1280, 1292 (8th Cir. 1975), cert. granted, 422 U.S. 1055, 95 S.Ct. 2677, 45 L.Ed.2d 707 (1975) (No. 74–1222, argued Feb. 24, 1976), and cases there cited.

nounced and forcible entries into vacant premises, even homes, in order to conduct a search, are constitutional in the *absence* of exigent circumstances, provided that the search and seizure is pursuant to warrant and reasonable under the circumstances. *Payne v. United States,* 508 F.2d 1391, 1394 (5th Cir. 1975), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Gervato,* 474 F.2d 40 (3d Cir. 1973), *vacating* 340 F.Supp. 454 (E.D.Pa.1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973).

 In short, *Ker* presented a considerably more compelling situation than the one presented here, yet the Supreme Court found no constitutional infirmity. It follows that defendant's constitutional rights were not violated here.

 We recognize, of course, that *Ker* was decided by a closely divided Court in a somewhat different context than appears here. Whatever doubt we might otherwise have about that decision's controlling this one, however, is allayed by the subsequent statement of a nearly unanimous Supreme Court in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that electronic surveillance (albeit without a prior breaking and entering) can be accomplished without a prior announcement. The Court stated:

A conventional warrant ordinarily serves to notify the suspect of an intended search. But if *Osborn* [*Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966)] had been told in advance that federal officers intended to record his conversations, the point of making such recordings would obviously have been lost; the evidence in question could not have been obtained. In omitting any requirement of advance notice, the federal court that authorized electronic surveillance in *Osborn* simply rec-

ognized, as has this Court, that *officers need not announce their purpose before conducting an otherwise authorized search if such an announcement would provoke the escape of the suspect or the destruction of critical evidence.* See *Ker v. California,* 374 U.S. 23, 37–41 [83 S.Ct. 1623, 1631–1634, 10 L.Ed.2d 726].

389 U.S. at 355 n. 16, 88 S.Ct. at 513 (emphasis supplied). Although neither *Katz* nor *Osborn* involved a forcible breaking and entering, both did involve electronic surveillance of private conversations, which is without more a search and seizure entitled to protection under the Fourth Amendment. *Katz* at 353, 88 S.Ct. 507. The quoted passage, accordingly, necessarily dispels of any *per se* rule that a threatened destruction of evidence cannot justify an unannounced search and seizure. It further indicates, specifically, that the self-defeating nature of an announcement prior to electronic surveillance is a sufficiently exigent circumstance to render the unannounced search and seizure reasonable. And, while there are two aspects to the search and seizure which occurred here, as compared with one in *Osborn* and *Katz,* this difference is, for constitutional purposes, one of degree rather than kind. Since an intrusion occurs in either case, and since the exigencies are precisely the same, the result should likewise be the same.[17]

We hold that both aspects of the search and seizure conducted in this case were reasonable under the Fourth Amendment.

B

We next consider whether applicable principles of statutory and common law authorize or prohibit the challenged activity. We note initially that Title III is silent on whether officers are, or by the court order may be, authorized to break and enter

17. We have not ignored additional language in footnote 16 in *Katz,* 389 U.S. at 355–56, 88 S.Ct. 507. The second paragraph in the footnote is written in deference to Mr. Justice Brennan's opinion in *Ker.* It explains that the concerns expressed in that opinion are not relevant to judicially authorized electronic surveillance.

While those concerns might in some cases be relevant to judicially authorized electronic surveillance accompanied by a forcible breaking and entering, this would not be true where the premises broken and entered were, as here, vacant.

premises surreptitiously in order to install a surveillance device.

The Government urges, *inter alia,* that 18 U.S.C. § 3109 [18] authorizes the activity here engaged in. This statute, however, cuts two ways, containing both authorizing and prohibitory language. Indeed, if it is to be applied literally, it would surely defeat the Government's claim. The officers' entry in this case did not follow an announcement of authority and purpose, nor were the officers either refused admittance or in need of liberation.

 We conclude, however, that § 3109 is not a statute to be woodenly applied without regard to the particular circumstances at hand, that it is instead a codification of the common law, subject to such exceptions as were there recognized.[19] This conclusion has been indicated by the Supreme Court, widely accepted by courts of appeals in other circuits, and presaged in this court.

The Supreme Court on several occasions expressly reserved the question whether or what exigent circumstances might justify noncompliance with § 3109. *Miller v. United States,* 357 U.S. 301, 309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Wong Sun v. United States,* 371 U.S. 471, 483–84, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Most recently, however, in *Sabbath v. United States,* 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828 (1968), the Court stated, in dictum:

Exceptions to any possible constitutional rule relating to announcement and entry

have been recognized, see *Ker v. California, supra,* 374 U.S. at 47 [83 S.Ct. [1623] at 1636] (opinion of Brennan, J.), and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification.

This view has received substantial adherence in the courts of appeals. *See, e. g., United States v. Mapp,* 476 F.2d 67, 75 (2d Cir. 1973); [20] *Rodriguez v. Jones,* 473 F.2d 599, 607 (5th Cir. 1973), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973); *United States v. Manning,* 448 F.2d 992, 1001–02 (2d Cir. 1971) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). In addition, this court has previously observed:

[I]n construing . . . § 3109, the federal courts have held that when exigent circumstances exist, failure to comply with the statute does not render the entry upon the premises unlawful.

*Salvador v. United States,* 505 F.2d 1348, 1352 (8th Cir. 1974).

C

 There remains the task of determining whether the circumstances before us were such as would justify noncompliance with the requirements of § 3109 and its common law underpinnings. For essentially the same reasons that rendered the search reasonable under the Fourth Amendment, although under somewhat different precedents, we think it abundantly clear that they were. The facts that the premis-

---

**18.** "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

**19.** This conclusion obviates the necessity of our deciding two questions as to whether or not § 3109 in fact applies to the facts of this case, questions which, incidentally, neither party has seen fit to raise. There is substantial authority, cited *infra* in this opinion, notes 21 and 22, that § 3109 has no application either to nondwellings or to vacant premises. However, once it is

resolved that § 3109 is itself a codification of the common law, we see little point in determining the precise contours of § 3109, since the common law will in any event control the result. We thus prefer to view the kind of premises searched and whether they were occupied as circumstances to be considered in assessing what the common law was and is.

**20.** *United States v. Mapp* also stated, 476 F.2d at 75, that the *Sabbath* footnote completed a merger of the Fourth Amendment rule and the statutory standard of § 3109. We have no occasion in this case to accept or reject this additional proposition.

es in question were business premises and that they were unoccupied mitigated the privacy intrusion which might otherwise have occurred, while at the same time the fact that compliance would obviously have been self-defeating heightened the legitimate need of the law enforcement officials to proceed as they did.

The caselaw has consistently recognized that considerably more protection is to be afforded a home than other premises. The leading decisions under § 3109, *Miller, supra,* and *Sabbath, supra,* as well as the dissenting opinion of Mr. Justice Brennan in *Ker, supra,* (to which reference is made in *Sabbath*), are each heavily predicated upon the ancient precept that "a man's home is his castle." Several courts have already ruled that § 3109 is inapplicable to nondwellings and have denied suppression on that ground.[21] These cases are inconsistent with a view that the common law afforded any protection to nondwellings against unannounced forcible intrusions, except, of course, the necessity of probable cause and (in the case of a search) a warrant. And the early common law in this country appears to have afforded no such protection. Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,* 112 U.Pa.L. Rev. 499, 505, 508 (1964).

The fact that the searched premises were unoccupied is also of considerable significance. *Miller, Ker,* and *Sabbath* were each concerned with premises which were occupied. When the premises are vacant, there is some merit in invoking the "useless gesture" exception specifically noted in *Miller,* 357 U.S. at 310, 78 S.Ct. 1190, although,

strictly speaking, that exception, like the rule to which it is attached, seems to presuppose that the premises *are* occupied. One line of cases, unanswered so far as we are aware, holds that § 3109 is inapplicable to vacant premises and, further, that the common law afforded no protection to vacant premises against unannounced forcible intrusions for the purpose of conducting a search, provided there is probable cause and a warrant and the search is reasonable under the circumstances.[22] And the early common law in this country similarly appears to have afforded no such protection. *Blakey, supra* at 505, 508.

▮ Finally, the exigencies before us are substantial. *Katz v. United States, supra* 389 U.S. at 355 n. 16, 88 S.Ct. 507, recognized, in a constitutional context, the validity of an analogy between a threatened destruction of evidence and the fact that communications which are to be intercepted would not be had if an announcement were required. The analogy is equally valid in a nonconstitutional context. Given this analogy, and having decided that § 3109 is a codification of the common law, we recognize that there is some force to an argument, based upon the California caselaw sustained in *Ker* and other similar caselaw, that the common law does allow an exception where destruction of evidence is threatened, without further qualification. Such a holding, however, would be one of broad consequence not warranted on the facts here, and one which several considerations would urge us to approach with caution. Most significantly, our holding that § 3109 is a codification of the common law is predicated in large measure upon the *Sabbath* footnote quoted above. That foot-

---

**21.** *United States v. Johns,* 466 F.2d 1364, 1365 (5th Cir. 1972); *Fields v. United States,* 355 F.2d 543 (5th Cir. 1966), *cert. dismissed,* 384 U.S. 935, 86 S.Ct. 1452, 16 L.Ed.2d 536 (1966); *United States v. Hassell,* 336 F.2d 684, 686 (6th Cir. 1964), *cert. denied,* 380 U.S. 965, 85 S.Ct. 1111, 14 L.Ed.2d 155 (1965). *But cf. Wong Sun v. United States,* 371 U.S. 471, 479–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (business premises attached to dwelling by hallway); *United States v. Phillips,* 497 F.2d 1131, 1133–34 (9th Cir. 1974) (business premises occupied); *Unit-*

ed *States v. Case,* 435 F.2d 766, 770 n. 1 (7th Cir. 1970).

**22.** *Payne v. United States,* 508 F.2d 1391, 1393–94 (5th Cir. 1975), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Gervato,* 474 F.2d 40 (3d Cir. 1973), *vacating* 340 F.Supp. 454 (E.D.Pa.1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973). *See also United States v. Hawkins,* 243 F.Supp. 429, 432 (E.D.Tenn.1965). *Cf.* cases cited at note 16, *supra,* which concern forcible entries into vacant premises to effect *arrests.*

note refers us to the opinion of Mr. Justice Brennan in *Ker,* not to the opinion of Mr. Justice Clark, and the Brennan opinion conspicuously rejects any broad destruction of evidence exception in the absence of a knock.[23] It is thus yet uncertain whether any such broad exception is to be engrafted onto § 3109, even though *Ker* did, in our view, settle the constitutionality of such a measure. In addition, our review of the decisions of the lower federal courts in this area indicates that, while the decisions are not altogether harmonious, each of them stops short of adopting any broad rule allowing an unannounced entry upon reasonable grounds to believe that evidence might be destroyed, each of them requiring a knock and some requiring more.[24] We thus decline to adopt any broad rule. We conclude instead that the nature of the alleged exigency is one circumstance which, with the other relevant circumstances, is to be considered in determining whether noncompliance is justified. On the facts here, the government's need to avoid an announcement can only be described as acute.

We see little point in exhaustively reviewing the cases we have heretofore cited.[25] If they indicate anything, they indicate that each case must be decided on its own facts. *See Jones v. United States,* 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697

(1960). While none of them presents the precise situation before us, each of them proceeds on a view that the kind of premises searched, whether the premises are occupied, or the nature of the alleged exigency, is a factor which, in some cases by itself and in other cases in conjunction with one or more other factors, may justify noncompliance with all or part of § 3109 and its common law underpinnings. We need not decide whether total or partial noncompliance is invariably justified when nondwellings are searched, when vacant premises are searched, or when a destruction of evidence is threatened. In some respects, then, we need not go as far as some of the cited cases already have. However, when these factors appear in conjunction, the result is an obvious, if narrow, one.

■ We hold that law enforcement officials may, pursuant to express court authorization to do so, forcibly and without knock or announcement break and enter business premises which are vacant at the time of entry in order to install an electronic surveillance device, provided the surveillance activity is itself pursuant to court authorization, based on probable cause and otherwise in compliance with Title III. We express no view on the result which obtains when one or more of these factual variants is altered.

**23.** Mr. Justice Brennan would allow a forcible and unannounced intrusion into a private home "where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that . . . the destruction of evidence is being attempted." *Ker v. California, supra* 347 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., dissenting).

**24.** *United States v. Wysong,* 528 F.2d 345 (9th Cir. 1976) (motel room); *United States · v. Smith,* 171 U.S.App.D.C. 342, 520 F.2d 74 (1975), *appeal after remand,* 524 F.2d 1287 (D.C.Cir. 1975); *United States v. Bustamante-Gamez,* 488 F.2d 4 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974) (garage); *United States v. Mapp,* 476 F.2d 67 (2d Cir. 1973); *United States v. Manning,* 448 F.2d 992 (2d Cir. 1971) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971); *United States v. Likas,* 448 F.2d 607 (7th Cir. 1971); *Masiello v. United*

*States,* 115 U.S.App.D.C. 57, 317 F.2d 121 (1963).

In each of these cases, except as otherwise indicated, the premises searched were a home. In each of them, the premises were occupied at the time searched.

**25.** A number of the cited cases concern intrusions for the purpose of effecting an arrest rather than a search. This difference is of little, if any, consequence, since the governing criteria with respect to an arrest are identical with those embodied in § 3109. *Sabbath v. United States, supra,* 391 U.S. at 588–89, 88 S.Ct. 1755. *Miller v. United States, supra,* 357 U.S. at 306, 78 S.Ct. 1190. An exception to this principle, however, appears to have developed with respect to the issue whether the premises are occupied or not, and we have carefully distinguished the arrest and search cases with respect to this issue. See notes 16 and 22, *supra.*

## VI

■ Defendant's final contention questions whether the use of a person's intercepted communications against him violates the self-incrimination clause of the Fifth Amendment and asserts a seeming "irreconcilability" between a view that it does not and the holding of the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The contention is clearly unavailing in light of Supreme Court decisions sustaining surveillance activity in sufficiently circumscribed circumstances. *See, e. g., Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966). As to the seeming irreconcilability, we find none. *Miranda* has application where the suspect is "subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way", 384 U.S. at 477, 86 S.Ct. at 1629, and is designed to mitigate "the compulsion inherent in custodial surroundings", *id.* at 458, 86 S.Ct. at 1619. *Miranda* has no application on the facts here. See the extensive discussion, in a context affording a much closer question than appears here, in *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed. 2d 1 (1976).

Affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent from Part V of the majority opinion. I question whether the effective enforcement of our criminal laws requires government agents to break and enter private premises, like common burglars, to plant eavesdropping devices.

The court order obtained in this case authorized the government:

to make secret and, if necessary, forcible entry any hour of the day or night which is least likely to jeopardize the security of this investigation, upon the premises . . ., in order to install and subsequently remove whatever electronic equipment is necessary to conduct the interception of oral communications in the business office of said premises.

Pursuant to this order the government stipulated,

that the bug was placed in the Defendant's body shop by a Government agent without the Defendant's permission, after business hours when the body shop was closed and locked, . . .

It is clear that conversations, either oral or telephonic, may lawfully be intercepted under strict statutory and constitutional limitations. *See* 18 U.S.C. § 2510 *et seq.*; *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Cox,* 462 F.2d 1293 (8th Cir. 1972). Further, I am well aware that the Fourth Amendment is now interpreted to protect "people" and not "places". Nevertheless, when interception is authorized, the means required to invade zones of privacy must be no greater than necessary. *Katz, supra* 389 U.S. at 355, 88 S.Ct. 507; *Berger v. New York,* 388 U.S. 41, 57, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The right to be secure in our homes is still sacrosanct. As the Supreme Court stated in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886):

It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offence, . . .

116 U.S. at 630, 6 S.Ct. at 532.

Several methods of electronic surveillance are available and might have been used by the government in this case to intercept conversations without forcible entry of the defendant's private office. First, telephone conversations may be lawfully intercepted. In fact, a tap of the defendant's phone was authorized at the same time as was the forcible entry. Second, other electronic devices allow interception of conversations within buildings without surreptitious entry by government agents into private premises. Third, informers can be used to disclose and record those conversations to which

they are a party. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

It is urged that forcible entry into a home or office is authorized in other cases when necessary to search for physical evidence. However, forcible entry may be made in such cases only under exigent circumstances, *see Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); or when the officer serving a warrant is refused entry after he had knocked and given notice of his purpose. 18 U.S.C.A. § 3109. This "knock and give notice" requirement protects individual privacy, prevents unnecessary destruction of property, and safeguards "officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there." *Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968).[1]

The government argues that notice is not a relevant consideration here, since eavesdropping can succeed only when carried out without the knowledge of the target speaker. *See Katz v. United States, supra* 389 U.S. at 355, n. 16, 88 S.Ct. 507. This may be true, but I fail to see how it justifies a clandestine breaking and entering of private premises.

The government urges that a warrant may properly authorize forcible entry into a home or other building known to be unoccupied. *See Payne v. United States,* 508 F.2d 1391, 1394 (5th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Gervato,* 474 F.2d 40 (3rd Cir. 1973), *vacating* 340 F.Supp. 454 (E.D. Pa.1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973). However, when a building is unoccupied and will remain so for the foreseeable future, then forcible entry is the only way that evidence inside it may be seized. In such a case, however, the search may be done openly and without stealthy entry.

The government does not contend that there was no other way to obtain evidence, only that the available alternatives were not well suited to do so. The record disputes this. No exigent circumstances existed here. Successful alternative means are documented in the record. No less than five confidential informants had informed the government of all aspects of the defendant's alleged fencing operation. A month before this warrant was issued, government agents had actually recovered some stolen property which was in Agrusa's control. Besides the evidence from the informants and from recovery of some of the property, the government had available the use of wiretaps on the defendant's phone.

Even if no other practical means of surveillance existed, however, a grant of authority for forcible entry of private premises with the speculative hope of obtaining some future conversation concerning criminal activity would still not be justified. The government's interest in law enforcement does not outweigh the citizen's justifiable expectation that government officials will not, under the cloak of authority, surreptitiously break into his home or office. I would hope there still exists "a private enclave where [a person] may lead a private life"[2] without fear of stealthy encroachment by government officials. This sanctity must give way only when the government's interest is paramount. When we weigh such interests, we should do so most carefully.

I know of no other case which has approved a warrant of this type. The majority, I sense, is uneasy about the precedent set today, and attempts to limit its holding to business offices rather than to homes. The true danger of the holding lies there, however, for the distinction between home

---

1. The Court in *Sabbath v. United States, supra,* quoting from its earlier opinion in *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), stated:

 The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. 391 U.S. at 589, 88 S.Ct. at 1758.

2. *Murphy v. Waterfront Comm.,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1597, 12 L.Ed.2d 678 (1964).

and office under the Fourth Amendment is tenuous at best. *See Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); *United States v. Phillips,* 497 F.2d 1131, 1133 (9th Cir. 1974).

If this were a private home, then upon what ground, under the majority's reasoning, could the search be struck down? A warrant was obtained upon probable cause and the relevant statutes were theoretically complied with. The only ground for reversal would be that the sanctity and privacy of the home is too great and therefore, that the search was unreasonable. But I suggest that the privacy of a person within business premises deserves the same consideration. Rather than draw artificial distinctions, I would hold searches such as this to be unreasonable per se.

Mr. Justice Frankfurter, dissenting in *On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), expressed a view appropriate to our holding:

> The law of this Court ought not to be open to the just charge of having been dictated by the "odious doctrine," as Mr. Justice Brandeis called it, that the end justifies reprehensible means. To approve legally what we disapprove morally, on the ground of practical convenience, is to yield to a short-sighted view of practicality. . . . The method by which the state chiefly exerts an influence upon the conduct of its citizens, it was wisely said by Archbishop William Temple, is "the moral qualities which it exhibits in its own conduct."
>
> . . . Of course criminal prosecution is more than a game. But in any event it should not be deemed to be a dirty game in which "the dirty business" of criminals is outwitted by "the dirty business" of law officers.

> . . . . .

> My deepest feeling against giving legal sanction to such "dirty business" as the record in this case discloses is that it makes for lazy and not alert law enforcement. It puts a premium on force and

fraud, not on imagination and enterprise and professional training.

343 U.S. at 758, 761, 72 S.Ct. at 974.

I would suppress the evidence from the bug planted in the defendant's office and reverse the conviction.

## ON REQUEST FOR REHEARING

Request for rehearing en banc in the above case is denied by an evenly divided court. Four judges voted to grant the rehearing and four judges voted to deny the rehearing.

LAY, HEANEY, BRIGHT and HENLEY, Circuit Judges, dissenting from the order denying a rehearing en banc.

We have voted to grant appellant's request for a rehearing en banc because we believe that the fourth amendment does not permit government agents to break into and enter private property to spy out evidence which might develop in the future by planting an electronic bug in such premises.

We entertain great doubt of the validity of a judicial order which authorizes such a break-in. We tend to agree with the views of Judge Lay expressed in dissent to the panel opinion.

This case is an important one concerning an aspect of individual liberty—a person's right to privacy from secret government intrusion into his own premises. Accordingly, we dissent from the order denying a rehearing before the whole court.