**UNITED STATES of America**

v.

**Carroll D. FORD et al.**

**Crim. Nos. 76–55 to 76–59.**

United States District Court, District of Columbia.

April 23, 1976.

Daniel J. Bernstein, Asst. U. S. Atty., Washington, D. C., for United States.

Henry J. Monahan, Rockville, Md., for Carroll D. Ford.

James Lyons, Washington, D. C., for Wesley Dessaso.

Harry S. Weidberg, Charles J. Broida, Adelphi, Md., for Steve F. DaCosta.

Charles Barker, Washington, D. C., for Daniel Haile, Jr.

Orie Seltzer, Mt. Rainier, Md., for Melvin E. Smith and Thomas L. McColl.

George D. Gates, Washington, D. C., for James L. Smith.

Theodore J. Christensen, Washington, D. C., for Jerome Smith.

GESELL, District Judge.

## MEMORANDUM AND ORDER

Motions to suppress are before the Court raising questions common to these five indictments in which eight defendants are charged with various narcotic drug offenses under the United States and District of Columbia Codes. The Government's proof is based in part on interceptions of oral communications made by the District of Columbia police after having placed transmitting devices inside the Meljerveen Ltd. Shoe Circus, an establishment located on Georgia Avenue, N.W., in Washington, D.C. The police acted under an order of another

Judge of this Court[1] authorizing the interceptions based on D.C.Code §§ 23–541 *et seq.* entitled "Wire Interception and Interception of Oral Communications," which is a local statute tracking the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*

Defendants contend, among other things, that D.C.Code § 23–541 is unconstitutional as applied in this instance because, in the absence of limitations placed by the Code, the authorizing Judge did not restrict the manner of entry and gave unlimited authority for any number of entries to be made in connection with installation of the devices. This challenge to the warrant as overly broad is strenuously opposed. Testimony was taken and the issues must be resolved within the traditional procedural and substantive protections that have developed for implementing the strictures of the Fourth Amendment to the Constitution.

This is not a wiretap case where police intercept by a tap made outside the premises under surveillance. Rather, it is a "bugging" case involving entry into such premises and subsequent interception of conversations by a transmitting device installed inside. The questions presented are somewhat novel because a recently enacted statute is invoked and there are few "bugging" decisions. Before considering the legal issues, the Court will first outline what apparently occurred when the authorization was obtained and executed as developed at the suppression hearing.

The police, working closely with the United States Attorney, had concluded on substantial evidence that two or more defendants were operating a narcotic business primarily during night hours[2] at the Meljerveen Ltd. Shoe Circus in Washington, D.C. The police were reliably informed that targets of the investigation apparently believed their telephone was tapped, and the police therefore sought means to "bug" the premises. Use of a spike mike or parabolic mike was considered impractical under the physical conditions pertaining at the site and discussion therefore focused upon how "bugs" might be installed in the premises themselves.

Before approaching the Judge, the U. S. Attorney's office considered simulating a nighttime break-in, a fire or postal inspection, and a bomb scare. Because of "Watergate" overtones, a break-and-enter was rejected and the decision made to use a bomb scare ruse to evacuate the premises, gain entry and effect the necessary installations.

This decision was orally presented to the Judge in chambers without a transcript by the U. S. Attorney's office and the Court took the view that any and all pretexts were reasonable, indicated no objection to the bomb scare ruse and left the entire decision as to method of entry to the police. Thereafter, the detective responsible for the affidavit in support of the application for the warrant was questioned on a transcript in chambers as to probable cause and instructed as to minimization. Based on the wholly sufficient affidavit and the detailed showing of probable cause, the Order (Misc. No. 75–159) authorizing interception of oral communications pursuant to D.C.Code § 23–547 was signed on September 4, 1975, at 11:20 a. m., without change in the undifferentiated form submitted by the U.S. Attorney. The authorization was to end in 20 days and the Order directed that an undesignated number of devices be placed "as soon as practicable." Minimization was required and the court directed that periodic progress reports be made on the fifth, tenth, fifteenth and twentieth days. Movants focus on paragraph (d) of the Order which reads as follows:

1.  Under the Rules of the United States District Court for the District of Columbia, a judge who approves a search warrant is never assigned responsibility for the subsequent indictment resulting from the search. This is done in order that no judge shall be called on to examine the validity of his own warrant in a subsequent suppression proceeding such as this.

2.  Overhearing was originally authorized from 6:00 p. m. to 6:00 a. m. but the hours of interception were later extended on a transcribed record dated September 16, 1975.

(d) Members of the Metropolitan Police Department are hereby authorized to enter and re-enter the Meljerveen Ltd. Shoe Circus located at 4815 Georgia Avenue, Northwest, Washington, D.C., for the purpose of installing, maintaining and removing the electronic eavesdropping devices. *Entry and re-entry may be accomplished in any manner, including, but not limited to, breaking and entering or other surreptitious entry, or entry and re-entry by ruse and stratagem.* (Emphasis supplied.)

The "bugs" were installed in about a half hour's time by a team of three or four police posing as a unit of the police bomb squad on September 5, around 11:30 a. m. On September 6, the police realized the "bugs" were not working and advised the U. S. Attorney who in turn advised the authorizing Judge. It was decided to re-enter on the same bomb scare ruse and install new "bugs," and the Judge approved. No transcript was taken.

The second entry was made in the same fashion as the first on September 10 about 1:30 p. m. and this time the interception worked. There were two functioning "bugs," both of the type that connected to AC current; one was on the store floor attached to an icebox which was near the point where the front sales room and a back storage-type room less frequented by the public adjoined and the second was attached to the overhead light of basement room where there was a type of lounge not open to the public.

Reports were made to the Judge on September 9, 15, 22 and 24. Minimization was conscientiously undertaken and the interception eventually terminated on the 20th day by another entry openly made under the warrant.

Thus it is apparent that the authorizing Judge was fully informed and maintained close scrutiny over what was taking place. A review of the jacket, Misc. No. 75–159, which records all papers relating to the

interception, reflects the way the matter was monitored by the Judge.

The decisions under the Fourth Amendment or related statutes dealing with the installation of transmitting devices in private quarters to enable a continuous overhearing from the outside of what takes place inside are extremely few and not particularly instructive as guides for resolution of the instant case. Obviously the reasonableness of the search and seizure in this instance must withstand the closest scrutiny.

Where a search warrant issues for the seizure of specified contraband or evidence, there are statutory provisions in the District of Columbia governing execution. For example, an officer serving the warrant must announce his intention to enter and his identity. The time the warrant is executed is also generally limited to daytime unless a magistrate permits nighttime entry for cause shown. Moreover, upon entry the search is limited to specific, previously identified items. There is no re-entry. In contrast, the installation of a transmitting "bug" in private premises as a necessary condition precedent to the search and seizure of the subsequent oral communications must, in the nature of things, be proceeded by a covert entry of some kind. The existence of the warrant, the entry by the police, the safeguards of prior warning before the search commences, etc., must all be hidden from the private parties searched in order to carry out the purpose of the police under the authority of the warrant. There are no express statutory provisions in the District of Columbia authorizing covert entry by the police into private premises for the purpose of installing an overhearing device. Furthermore, there are no statutory provisions identifying the technique to be used for accomplishing such an installation nor are there any limitations placed by statute upon the type of ruse or technique that the police may or may not employ.

A search of the legislative history of both the Omnibus Crime Control and Safe Streets Act of 1968[3] and the District of

---

**3.** The D.C.Code provisions on electronic surveillance were based on the predecessor federal

statute, *see* H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 77 (1970); S.Rep. No. 91–538, 91st

Columbia Court Reform Act of 1970, which contains the applicable provisions of the D.C.Code, reveals that Congress did not focus on the fact that entry might be deemed necessary to place a "bug" and overhear oral communications. There is at best only oblique reference to this problem, e. g., Sen.Rep. No. 90–1097, 90th Cong., 2d Sess. 103 (1968), U.S.Code Cong. & Admin.News 1968, p. 2112 ("A wiretap can take up to several days or longer to install. Other forms or devices may take even longer."). However, the D.C.Code and the federal statute, as amended in 1970,[4] contain the following section:

An order authorizing the interception of a wire or *oral communication* shall, upon request of the applicant, direct that a communication common carrier, *landlord, custodian or other person* shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception *unobtrusively* . . .. 18 U.S.C. § 2518(4), D.C.Code § 23–547(f) (emphasis added).

While this amendment may suggest a lack of authority to break and enter, it is apparent that Congress in the course of its thorough inquiry into electronic surveillance was aware that "bugging" devices exist which require surreptitious entry to install, and indeed it expressly authorized a court to order a landlord or other person to assist so that such installation could occur unobtrusively. Since the statute does not bar the use of such devices by the police, Congress must be taken at least to have granted or impliedly recognized the general power of a court to authorize a covert and possibly otherwise illegal entry to place a "bug" under some circumstances.

Given this apparent congressional intent, coupled with the total absence of any limitations or restrictions upon the manner of carrying out the installation and the use of devices to overhear oral communications, it is obvious that an extraordinarily heavy burden is placed upon the judge or magistrate who must approve the authorization in advance. This burden arises not only from the breadth of the statutory authority but is compounded by the scope of the intrusion and the continuous nature of the seizure which results from nonconsensual overhearing of conversations.

The suppression motions focus initially on the overbreadth of the authorizing order in two respects:

(1) The open-ended nature of the authority given to the police to enter and re-enter, day or night, at their volition over a twenty-day period without probable cause for each distinct entry being justified in advance.

(2) The breadth of the Order in permitting entry by any means, including break-in.

As indicated, the proof shows that in fact the authorizing Judge carefully monitored the situation. Periodic reports were made to the Judge. It is also apparent that conversations were had with the Judge concerning the means of entry in advance, namely, the bomb scare ruse; that the malfunctioning after the first entry was promptly reported; and that the Judge thereafter discussed re-entry by another bomb scare ruse. Thus the judge knew in advance what the police were going to do and approved it as reasonable. Moreover, it cannot be claimed that the ruse itself was unreasonable since the police in fact entered as police, which they actually were, and they merely dissimulated as to their purpose.

Nevertheless, while the Court in fact "held reins" on the police conduct under the authorizing order, the question of facial overbreadth is still a troubling one.

---

Cong., 1st Sess. 18 (1969); 115 Cong.Rec. 19268 (1969) (summary of Sen. Hruska). Thus the legislative history of Title III of the Omnibus Crime Control Act is relevant to the instant case.

4. H.R.Rep. No. 91–1303, 91st Cong., 2d Sess. 238 (1970) (Conference Report). *See* 115 Cong. Rec. 37192–93 (1969) (remarks of Sen. McClellan).

A warrant must be specific. It is not a general hunting license. Where more than one entry is involved each intrusion must be treated formally and approved in advance so that the judge or magistrate can supervise when and how the entry is to be accomplished. A separate determination of probable cause and reasonableness is required as to each intrusion upon private premises. *See Berger v. New York,* 388 U.S. 41, 57, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040, 1051 (1967); *Osborn v. United States,* 385 U.S. 323, 328–30 & n. 6, 87 S.Ct. 429, 432, 17 L.Ed.2d 394, 399 (1966); *see also* Sen.Rep. No. 90–1097, 90th Cong., 2d Sess. 101 (1968) ("Where it is necessary to obtain coverage to only one meeting, the order [for electronic surveillance] should not authorize additional surveillance. Compare *Osborn v. United States,* 87 S.Ct. 429, 385 U.S. 323 (1966).") The authorization given in this instance did not limit the number of entries nor did it specify either the general time or manner of entry. Thus the authority given was far too sweeping.

Although the Court agrees that not "every minor facial insufficiency" must result in suppression, *United States v. Vigi,* 515 F.2d 290, 293 (6th Cir. 1975), *cert. denied,* 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975), the overbreadth present here is not a technical matter which can be overlooked because of inadvertence or mistake. It goes to the heart of the warrant process. Electronic surveillance must be limited to situations in which there is the strictest adherence to constitutional and statutory standards, *see, e. g., United States v. Giordano,* 469 F.2d 522, 530 (4th Cir. 1972), *aff'd,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and the police cannot be left with virtually unrestrained discretion in installing a surreptitious listening device, *cf. Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Moreover, Congress expected that warrants for electronic surveillance would be narrowly drawn to fit precisely the particular circumstances of the individual case. *See* Sen.Rep. No. 91–538, 91st Cong., 1st Sess. 20–21 (1969)[5] ("The order entered by the court need not be in the form requested by the application; rather, it is anticipated that the order will be framed narrowly, consistent at once with the right to privacy of the aggrieved persons, on the one hand, and, on the other hand, the demonstrated and cognizable needs of the applicant and legislative policy favoring improved law enforcement manifest in this title."); Sen.Rep. No. 90–1097, 90th Cong., 2d Sess. 102 (1968) ("[Title III] is intended to meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances, which fully comply with the requirement of particularity (*Berger v. New York,* 87 S.Ct. 1873, 388 U.S. 41, 58–60 (1967), *Katz v. United States,* 88 S.Ct. 507, 389 U.S. 347, 355–56 (1967)).") Thus the Court is obliged to hold the warrant invalid on its face.

The Assistant U. S. Attorney attempts to avoid the consequences of this overbreadth by making a proffer to the effect that the Judge in fact approved each entry in advance and knew that contrary to the broad terms of the warrant the police were planning to enter at a reasonable time, for valid reasons each time and by what appears to be a wholly proper ruse. As already indicated, the Court is satisfied that these representations are correct. The difficulty, however, is that the Assistant's discussions with the Judge on which he bases his representations were not transcribed or presented by affidavits. Thus a formal record is wholly lacking and, as a practical matter, there is no supporting record to review. Under these circumstances the warrant as written is binding and exclusive, *see United States v. Armocida,* 515 F.2d 29, 45–46 (3d Cir. 1975), *cert. denied sub nom. Conti v. United States,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

5. Sen.Rep. No. 91–538 accompanied S. 2869, which was the original bill on electronic surveillance for the District of Columbia and was incorporated in the later version of S. 2601 that was adopted by the Conference and ultimately enacted into law. *See* H.R.Rep. 91–1303, 91st Cong., 2d Sess. 237 (1970) (Conference Report); 116 Cong.Rec. 24149 (1970) (remarks of Sen. Tydings); 116 Cong.Rec. 8913 (1970) (remarks of Sen. Tydings).

Moreover, the approach used by the Judge here is inconsistent with the congressional intent as to the proper procedures to be followed, *see* Sen.Rep. No. 90–1097, 90th Cong., 2d Sess. 102 (1968) ("[18 U.S.C. § 2518(2)] provides that the judge may require the applicant to furnish additional testimony or documentary evidence in support of the application. The additional testimony need not be in writing, but it should be under oath or affirmation and a suitable record should be made of it. The use of a court reporter would be the best practice."); *see also* Fed.R.Crim.P. 41(c).

There are many who would urge that in spite of these deficiencies it goes too far to suppress the overheard conversations which undoubtedly give support to the Government's prosecutions. The police acted with complete propriety, and one justification for an exclusionary rule is the salutary effect it is deemed to have in curbing occasional police abuses. But Congress has spoken and directed suppression in these circumstances.

 In 1968 Congress enacted the Omnibus Crime Control and Safe Streets Act on which the District of Columbia statute is modelled. It was there provided that if an oral communication interception was authorized by a warrant insufficient on its face, a reviewing court shall suppress. The District of Columbia statute is to the same effect, stating in D.C.Code § 23–551(b)(2):

> (b) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States or the District of Columbia, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
>
> .   .   .   .   .
>
> (2) the order of authorization or approval under which it was intercepted is insufficient on its face;  .  .  .

This directive is consistent with traditional search and seizure precedents, *see, e. g., United States v. Bermudez,* 526 F.2d 89, 96–97 (2d Cir. 1975); *United States v. Kaye,* 139 U.S.App.D.C. 214, 432 F.2d 647 (1970); *United States v. Higgins,* 428 F.2d 232 (7th Cir. 1970); *but see Sasser v. United States,* 227 F.2d 358 (5th Cir. 1955); *United States v. Curwood,* 338 F.Supp. 1104, 1110–11 & n. 11 (D.Mass.1972); *United States v. Harrison,* 319 F.Supp. 888 (D.N.J.1970), and suppression is the appropriate course in this instance. The courts have a duty imposed by both the statute and the Constitution. To be sure, it may be necessary from time to time to place "bugging" devices in private premises, but citizens are entitled to know not only that such "bugging" is accomplished with court authorization but also that the authorization is limited to the narrowest precise point necessary to accomplish the law enforcement purpose and that the reasons for the intrusion are included in the public record ultimately available for further court review whenever prosecution results.

Each motion to suppress is granted.

SO ORDERED.