Application of the UNITED STATES FOR AN ORDER AUTHORIZING the INTERCEPTION OF ORAL COMMUNICATIONS.

Misc. No. K–1051.

United States District Court, D. Maryland.

Dec. 30, 1976.

Jervis S. Finney, U. S. Atty., and Daniel F. Goldstein, Asst. U. S. Atty., Baltimore, Md., for the United States.

FRANK A. KAUFMAN, District Judge.

On December 20, 1976, the Government applied to this Court for an Order under 18 U.S.C. § 2518 authorizing the FBI to intercept oral communications, to install and to monitor necessary listening devices, and in connection with such installation and monitoring, to make one or more surreptitious entries. An *in camera*, on-the-record hearing was held on that date. The application discloses that the FBI is currently investigating the involvement of several persons allegedly engaged in gambling in violation of Md.Ann.Code art. 27, §§ 240 and 356 *et seq.* and 18 U.S.C. §§ 1955 and 371.[1] In so doing, the federal authorities have been requested by local law enforcement officials to assume primary responsibility and have so done, beginning several months ago. In early 1976 local law enforcement officials began investigating the possible illegal activities of the persons who are the alleged wrongdoers. Additionally, approximately two years ago, the FBI began an investigation of two of those persons.

---

1. The record in this case is presently sealed and therefore this opinion will reveal very little, if any, specific information. The information presented by the Government in writing, and orally on the record, sets forth in detail the investigation to date, the reasons for it, and the need and justification for further investigation.

Up to now, the investigation has involved the use of confidential informants, including customers of the alleged gambling ring, law enforcement surveillance of the suspected individuals, wiretaps of particular telephone numbers under the authority of a state Court Order, and electronic surveillance of one location. Local law enforcement officials also have unsuccessfully attempted to install listening devices in the commercial building suspected of being used by the individuals under investigation for the purpose of settling their accounts. It was because they were unable successfully to obtain sufficient information that the state authorities called upon the FBI to assume primary responsibility. The FBI desires to install three [2] listening devices within the commercial establishment, one of them in a private office, and two of them in a public part of the building for activation only during hours when that part of the building is closed to the public and when one or more of the target individuals are determined to be present.

The record supports the Government's contention that without bugging within the commercial establishment, the investigation, at least for the present, has reached an impasse. The confidential informants, who have supplied aid to date, fear for their safety and seemingly will be unwilling publicly to testify. Several of the principal targets at no time have spoken on the telephone tapped under the state Court Order. The Government believes that a search pursuant to a Court Order probably would be ineffective, since in the experience of the law enforcement officials involved in this case, gamblers frequently do not keep incriminating records. Infiltration of the gambling operation by an undercover agent currently appears impossible. The principals are a close-knit group whose members seem to discuss their gambling operation only among themselves and in extreme privacy. The layout of the commercial establishment in question renders physical surveillance of, at best, limited value.

If the Government had on December 20, 1976, sought only authorization to install a telephone wiretap, this Court would have granted the same. But herein the Government not only requests installation of the microphones, but it asks this Court to authorize it so to do by means of one or more surreptitious entries.

In *United States v. Ford*, 414 F.Supp. 879 (D.D.C.1976), Judge Gesell considered an order of another Judge of his own Court which had authorized surreptitious entry and bugging. Judge Gesell concluded that while that Judge had seemingly carefully supervised the Government's actions pursuant to his Order, nevertheless there was nothing in the record to establish that that Judge had considered and had authorized in advance each additional entry after the initial one. Judge Gesell concluded that such an "authorization [should be] limited to the narrowest precise point necessary to accomplish the law enforcement purpose and that the reasons for the intrusion [should be] included in the public record ultimately available for further court review whenever prosecution results." *Id.* at 885.

In its memorandum of law in support of its application to this Court, the Government has expressed concern that what it perceives as the very restrictive *Ford* approach would unduly hamper the use of the Order it seeks herein and might make it impossible, for instance, for the FBI, without a further Court Order, to reenter the building if its agents had been required temporarily to withdraw from it in order to avoid detection. The Government suggests that in such a circumstance, under *Ford*, it might be required to seek a hearing before and an additional order from a Judge of this Court, perhaps at midnight, before the FBI agents could reenter the building.

During the hearing on December 20, 1976, this Court reviewed with government

---

**2.** The affidavit of a law enforcement official states that the installation of at least two microphones is contemplated. However, during the December 20th hearing that same official

and also one of his colleagues stated that the installation of a total of three microphones is desired.

counsel procedures which could be established well within the *Ford* requirements and which would preserve close Court supervision of the time and nature of any surreptitious entry and at the same time provide sufficient flexibility so as not to hamstring the law enforcement officials. Thus, for example, any authorization for one or more surreptitious entries would be specifically limited to specific dates and times, with no additional entries to be made without further Court Order.

On that basis government counsel agreed with the Court that such details and guidelines could almost surely be spelled out by this Court in an Order in a way to meet *Ford* requirements and yet be satisfactory to the Government.

The question of when, and under what circumstances, surreptitious entry to install listening devices should be permitted presents a most delicate legal issue. Neither statutory provisions nor case law provide entirely clear guidance. Congressional intent at the time the Omnibus Crime Control and Safe Streets Act of 1968, Title III, now codified as 18 U.S.C. § 2510 *et seq.*, was enacted, is not explicitly disclosed by either the statutory language or its legislative history. Further, there exists in any event the question of whether such congressional action, if it has been taken, is constitutionally permissible. In *United States v. Agrusa*, 541 F.2d 690 (8th Cir. 1976),* Senior Judge Van Oosterhout, writing for a 2 to 1 majority, held a surreptitious entry effected under a Court Order to be constitutionally permissible. In so concluding, Judge Van Oosterhout noted that the federal statute did not itself speak specifically to the issue. *Id.* at 698–99. The Government herein takes a somewhat different view. First, it refers to 18 U.S.C. § 2518(4) which provides, in part:

An order authorizing the interception of a wire or oral communication shall, upon request of the applicant, direct that a communication common carrier, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception *unobtrusively* and with a minimum of interference with the services that such carrier, landlord, custodian, or person is according the person whose communications are to be intercepted. * * * [Emphasis added.]

The Government also points to 18 U.S.C. § 2518(7) which reads as follows:

(7) Notwithstanding any other provision of this chapter, any investigative or law enforcement officer, specially designated by the Attorney General or by the principal prosecuting attorney of any State or subdivision thereof acting pursuant to a statute of that State, who reasonably determines that—

(a) an emergency situation exists with respect to conspiratorial activities threatening the national security interest or to conspiratorial activities characteristic of organized crime that requires a wire or oral communication to be intercepted before an order authorizing such interception can with due diligence be obtained, and

(b) there are grounds upon which an order could be entered under this chapter to authorize such interception,

may intercept such wire or oral communication if an application for an order approving the interception is made in accordance with this section within forty-eight hours after the interception has occurred, or begins to occur. In the absence of an order, such interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earlier. In the event such application for approval is denied, or in any other case where the interception is terminated without an order having been issued, the contents of any wire or oral communication intercepted shall be treat-

---

* The Government has informed this Court that an application for certiorari is pending in the Supreme Court.

ed as having been obtained in violation of this chapter, and an inventory shall be served as provided for in subsection (d) of this section on the person named in the application.

While that section indicates that the Congress did consider the concept of exigent circumstances in terms of when warrantless interceptions may be made, it does not, even taken together with section 2518(4), directly address the question of surreptitious entry to install and to monitor a bug.

During the period when the statute was under consideration in the Congress, Senator Morse, an opponent of wiretapping, stated:

I know that elaborate efforts are made to distinguish between a real wiretap, or bug, which requires someone to intrude upon private premises to install. That kind of invasion is truly a search, requiring a warrant under conditions set forth in article 4. But electronic surveillance, whereby conversations can be picked up from scores of feet away, without any physical intrusion upon the premises involved, is a far more insidious invasion of privacy, and one which I do not believe should be tolerated at all. [114 Cong.Rec. 11598 (1968).]

Senator Tydings, a leading proponent, observed:

Tape [sic] must be installed on telephones, and wires strung. Bugs are difficult to install in many places since surreptitous [sic] entry is often impossible. Often, more than one entry is necessary to adjust equipment. Static and room noise interfere. Devices can be discovered. Wireless transmission can be intercepted. [114 Cong.Rec. 12989 (1968).]

While it may thus be argued that congressional intent is revealed by the statutory language and the legislative history, it is not as explicitly set forth as one would desire with respect to an issue as sensitive as the issue under consideration herein. Nor is the case law to date very revealing.

In *Ford, supra* at 883, Judge Gesell wrote:

However, the D.C.Code and the federal statute, as amended in 1970,[4] contain the following section:

[4] H.R.Rep. No. 91-1303, 91st Cong., 2d Sess. 238 (1970) (Conference Report). *See* 115 Cong. Rec. 37192-93 (1969) (remarks of Sen. McClellan).

An order authorizing the interception of a wire or *oral communication* shall, upon request of the applicant, direct that a communication common carrier, *landlord, custodian or other person* shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception *unobtrusively* . . . . 18 U.S.C. § 2518(4), D.C.Code § 23-547(f) (emphasis added).

While this amendment may suggest a lack of authority to break and enter, it is apparent that Congress in the course of its thorough inquiry into electronic surveillance was aware that "bugging" devices exist which require surreptitious entry to install, and indeed it expressly authorized a court to order a landlord or other person to assist so that such installation could occur unobtrusively. Since the statute does not bar the use of such devices by the police, Congress must be taken at least to have granted or impliedly recognized the general power of a court to authorize a covert and possibly otherwise illegal entry to place a "bug" under some circumstances.

In *United States v. London, et al.,* 424 F.Supp. 556 (D.Md.1976), Judge Blair, in a post-trial hearing, held not in error the admission at trial of evidence obtained through the use of recording devices installed by a covert entry, even though such entry had *not* been explicitly authorized by the Court Order authorizing the bug. In so doing, Judge Blair stated (At 560):

Necessarily concomitant to and envisioned in the court order, this court believes, was the covert installation of the recording devices. At the outset, it should be noted that there was no general search or seizure at the time of the installation, rather the FBI agents simply entered the premises, hid the microphones

and left. In so entering, the agents' sole purpose was effectuation of the court order. Realistically, this intrusion was no greater than the interceptions themselves, which were judicially authorized after a finding of probable cause. * *

Additionally, Judge Blair stated (at 560 n.3) that the "defendants did not timely question the admissibility of the tape recordings based on the FBI's covert installation activities either before or at trial" and that "[t]he nature of these installation activities clearly were within defendants' knowledge prior to trial." [3]

In *United States v. Altese, et al.,* No. 75–CR–341 (E.D.N.Y. October 14, 1976), Chief Judge Mishler denied a motion to suppress the use of evidence obtained through listening devices installed by surreptitious entry. Such entry had taken place, without explicit Court authorization, after a bug had been authorized in advance by Court Order. In so holding, Judge Mishler wrote (at 52): "[O]nce probable cause is shown to support the issuance of a court order authorizing electronic surveillance thereby sanctioning the serious intrusion caused by interception, there is implicit in the court's order, concomitant authorization for agents to covertly enter the premises and install the necessary equipment." Judge Mishler also stated (at 53): "Entry to install bugging devices is but a mere condition precedent that must necessarily be satisfied if the purpose behind an intercept order is to be effectuated." But in this Court's mind, there exists considerable doubt as to whether a surreptitious entry to install a bug can be treated simply as a condition precedent to the installation and the subsequent monitoring of the bug.

In *Agrusa,* both the majority and the minority opinions addressed the question of the constitutionality of surreptitious entry to effect the installation of listening devices. Therein, Judge Lay dissented from the 2 to 1 majority decision. Thereafter, a motion for an en banc hearing of the eight active Judges of the Eighth Circuit was denied by a 4 to 4 vote. The four Judges, including Judge Lay, who desired the rehearing en banc, wrote (at 704):

We have voted to grant appellant's request for a rehearing en banc because we believe that the fourth amendment does not permit government agents to break into and enter private property to spy out evidence which might develop in the future by planting an electronic bug in such premises.

We entertain great doubt of the validity of a judicial order which authorizes such a break-in. We tend to agree with the views of Judge Lay expressed in dissent to the panel opinion.

This case is an important one concerning an aspect of individual liberty—a person's right to privacy from secret government intrusion into his own premises. Accordingly, we dissent from the order denying a rehearing before the whole court.

In his dissent, Judge Lay, after recognizing (at 703) that there are circumstances under which forcible entry into a home or office is authorized, such as those which obtained in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), noted that while the Government in *Agrusa* did "not contend that there was no other way to obtain evidence", it did maintain that "the available alternatives were not well suited to do so." Disagreeing, Judge Lay stated: "The record disputes this. No exigent circumstances existed here." Additionally Judge Lay's dissent contains the following passage (at 703):

*Even if no other practical means of surveillance existed,* however, a grant of authority for forcible entry of private premises with the *speculative* hope of obtaining some future conversation concerning criminal activity would still not be justified. The government's interest in law enforcement does not outweigh the citizen's justifiable expectation that government officials will not, under the cloak of authority, surreptitiously break

---

**3.** A copy of Judge Blair's Memorandum and Order therein is in the court file in this case.

into his home or office. I would hope there still exists "a private enclave where [a person] may lead a private life" without fear of stealthy encroachment by government officials. This sanctity must give way only *when the government's interest is paramount.* When we weigh such interests, we should do so most carefully. [Emphases added; footnote omitted.]

During the hearing in this case on December 20, 1976, this Court questioned the law enforcement officers who were present about the possibility of use of techniques other than surreptitious entry and asked that further thought be given by the Government to that possibility. On the basis of the written and oral record herein, including written submissions made by the Government after December 20, 1976, this Court is satisfied that there is no other way to obtain the evidence in this case at this time. Thus, in this case, this Court must address the bottom line question which Judge Lay reached on an alternative basis.

In *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court, in the course of holding a New York wiretap statute unconstitutional, set forth minimum standards necessary to pass muster under the Fourth Amendment's proscription of unreasonable searches and seizures and to meet the standard of reasonableness. In *Berger*, the entry to plant the bug seemingly had been a surreptitious one (388 U.S. *supra* at 45, 81, 96, 102, 110, 87 S.Ct. 1873). It can be argued that *sub silentio* the Supreme Court in *Berger* approved or at least did not disapprove of the combination of surreptitious entry to install and monitor a bug and the bugging itself, provided the same was accomplished pursuant to appropriate safeguards and procedures. However, there was no discussion in *Berger* of surreptitious entry as such.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that evidence obtained by FBI agents from surveillance of a public telephone booth without prior judicial authorization was unconstitutional. However, Mr. Justice Stewart in the Court's majority opinion indicated that had such authorization for the surveillance under scrutiny in *Katz* been sought by the Government from a judicial officer, such officer "could constitutionally have authorized" the same. 389 U.S. *supra* at 354, 88 S.Ct. 507. In *Katz*, Mr. Justice Stewart also wrote (at 351, 88 S.Ct. at 511) that "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."

The question in this case is whether the type and combination of the proposed entry and surveillance outweigh individual privacy expectations and interests. The Government urges that reasonableness is the appropriate standard for determining whether search and seizure warrants should be issued by judicial officers—whether warrantless entries pass muster—and when notice of entry must be given. This Court is not in disagreement. But that still leaves open the question of whether the surreptitious entry the Government seeks to make herein is "reasonable" under the circumstances if the government interest is not, using Judge Lay's word, "paramount".

Searches and seizures, which result in entries into private homes or offices which are not unoccupied, whether they occur with or without a warrant and/or with or without prior notice, invade privacy. But those occurrences take place when probable cause exists—*and* they usually result in the target individuals being confronted and learning immediately of what is taking place. Such occurrences are to be contrasted with surreptitious entries into houses or offices for the purposes of installing a bug and then of monitoring the same thereafter for a period of time while the target individuals have no knowledge of the existence of the bug.

■ In this case, the Government seemingly is of the opinion that it desires further information before it seeks a search or seizure order or takes any step to prosecute the persons under investigation. The

Government takes the position that it has established strong reason for believing that an organized criminal group is engaged in organized illegal gambling, but that at this time it has run into a stone wall and its investigation is presently stymied. There thus may well be a strong need for law enforcement successfully to conclude investigation and move to indictment and prosecution. But is that need presently strong enough? There could be cases in which the Government seeks surreptitiously to enter and install bugs in which the Government's interest over personal privacy would appear paramount, such as in a case in which there is a strong basis for believing that a threat to bomb an office building is well founded and will be consummated within the next several days if the investigators do not achieve a breakthrough. It can be argued that in such a context the Government does not need a Court Order in advance and can act initially under section 2518(7). However, that subsection would still appear to require a Court Order in advance if the same can "with due diligence be obtained". If a Court Order were applied for under such circumstances, the law enforcement need for it to issue would of course be compelling.

█ The result of this Court's refusal to grant to the Government the authority it seeks may well cause the Government to conclude that the expense of continuation of surveillance and investigation is too great. But that, while unfortunate, may not be too great a price to pay. There does exist, in this Court's view, in the expecta-

tion of a large number, if not most, of the citizens of this county, a "private enclave"[4] beyond the reach of government intrusion except perhaps in emergencies. Telephone wiretapping pursuant to Court Order, as authorized by *Katz* and the 1968 legislation, has been recognized as required, in terms of balancing the interests of law enforcement vis-a-vis individual privacy.[5] But conversations at home or in a private business office, access to which is carefully limited and controlled, are engaged in by most Americans, in the opinion of this Court, with an expectation of at least limited privacy—an expectation which is subject to the knowledge that it gives way only when traditional probable cause standards permit search and seizure. That expectation has not been substantially diminished by any large scale contrary practices, at least as far as this Court knows. Further, that expectation of privacy is not one assumed to be subject to obliteration pursuant to a Court Order issued only because law enforcement officials have, after exhausting most diligently, as they have herein, the use of other investigatory tools, run into a roadblock which they can only bypass by surreptitious entry to plant bugs further to pursue their reasonable beliefs that on-going criminal conduct is taking place.[6] In the view of this Court, there is an expectation of "subjective" privacy on the part of most Americans with regard to their private conversations in homes and offices under such conditions. Further such expectation is "one that society is prepared to recognize as 'reasonable'" (Harlan, J., concurring in *Katz*, 389 U.S.

4. *United States v. Grunewald*, 233 F.2d 556, 581–82 (2d Cir. 1956) (Frank, J. dissenting), *rev'd*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), *quoted in Murphy v. Waterfront Comm.*, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). *See* the dissent in *Agrusa* (at 703).

5. There is, as the Government points out, a statement by Mr. Justice Rehnquist in *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973) that "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." But that comment

hardly was intended to proscribe the balancing approach followed in *Katz* and in other cases.

6. This Court assumes *arguendo* that the standards of *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1961), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) have been met, and that probable cause exists to search and seize with respect to some or all of the target individuals. However, the Government, as discussed *supra*, has stated what seem to constitute good reasons why what might be called an orthodox search and seizure would be unproductive.

*supra* at 361, 88 S.Ct. at 516). In this case, the Government seeks to place one or more microphones not only in a private room, but also in a public room to intercept conversations occurring during times in which the public is not permitted access. Seemingly, reasonable expectations of privacy in such a public place are less than those with regard to the private office. Even so, any surreptitious entry to place bugs can only pass muster if it meets the test of reasonableness by a demonstration of paramount need. It is not too much to require that the Government establish a more important interest than the obviously important interest it has already established herein before such interest is deemed "paramount"—before such interest should be held to out-balance the individual's expectation and entitlement to privacy. The Constitution and the Bill of Rights were not formulated and have not been enshrined to make the job of law enforcement officials always easier. Sometimes law enforcement needs cannot be entirely met.

It would be preferable if the Congress had itself set guidelines for the grant by Courts of bugging Orders requiring surreptitious entry. But in the absence of such congressional guidance, the duty of a Court, under the Constitution, requires no less than the refusal of permission to make such entries in the absence of most compelling reasons. In a case such as this one, a Court has both the constitutional authority and the constitutional duty to decline to authorize surreptitious entry in the absence of law enforcement needs which lack sufficient compulsion and urgency to be paramount over expectations of individual privacy. Accordingly, the application by the Government in this case at this time must be denied.

### ORDER

For reasons set forth in an opinion filed earlier today, the Government's pending application in this case is hereby denied. It is

so ORDERED, this 30th day of December, 1976.*

---

* This Order was reversed by the United States Court of Appeals for the Fourth Circuit. 563 F.2d 637 (4th Cir. 1977).