UNITED STATES of America, Plaintiff,

v.

Salvatore FINAZZO et al., Defendants.

Crim. No. 5–80597.

United States District Court,
E. D. Michigan, S. D.

March 18, 1977.

Philip Van Dam, U.S. Atty., Detroit, Mich., John L. Newcomer and Geoffrey A. Anderson, Special Attys., Dept. of Justice, Detroit, Mich., for plaintiff.

Michael H. Golob and Ivan E. Barris, Detroit, Mich., for defendant Finazzo.

S. Allen Early, Jr., Detroit, Mich., for defendant Licavoli.

## MEMORANDUM OPINION AND ORDER

KEITH, Chief Judge.

Defendants Finazzo and Licavoli have moved this court pursuant to 18 U.S.C. § 2518(10)(a) (1970) for an Order suppressing all evidence obtained by the government from the electronic interception of oral communications on the premises of AAA Store Fixtures, Inc. at 8624 Medbury, Detroit, Michigan. The court, having allowed briefs in support of and in opposition to these motions, is of the opinion that this matter should be handled without an oral hearing, pursuant to Rule IX(j) of the Local Court Rules.

The instant motions relate to electronic eavesdropping devices installed on the premises of AAA Store Fixtures, Inc. under court authorization orders[1] issued pursuant

---

1. These Orders are identified as follows: Original Order: 9–27–73–JF; Second Order/First Extension: 10–31–73–JF; Third Order/Second Extension: 11–30–73–RF.

The instant order does not rule upon the validity of the telephone interceptions since the telephones for which authorization to intercept wire communications had been obtained were monitored by means that did not require entry onto the premises where they were located. Durling Affidavit of Sept. 27, 1976, at 3. This assertion by the government was not challenged by the defendants. *But see*, note 3, *infra*.

to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (1970). These orders provide that agents of the Federal Bureau of Investigation were authorized to intercept oral communications emanating from persons on the designated premises for a specified period of time.

The first order authorizing the interception of telephone and oral communications at 8624 Medbury, Detroit, Michigan was signed by the Honorable John Feikens on September 27, 1973. Thereafter, according to an affidavit submitted on behalf of the government in response to these motions by F.B.I. Special Agent Durling, the case agent for this case, the F.B.I. was advised by the Department of Justice attorneys on the case that the order allowed entry onto the premises by forcible and surreptitious means if such was the only reasonable way to install the microphones. It was agreed among the agents familiar with the investigation that the only satisfactory way to install the microphones would be during the night when the entire premises—consisting primarily of a warehouse and offices, located in an industrial area of the city—was vacant and unguarded. The agents would then have sufficient time to complete the installation without being observed. Therefore, at approximately 1:00 a.m. on October 1, 1973 entry was made into the premises through an unlocked window by one F.B.I. agent. He then opened a locked door from the inside and admitted two other agents onto the premises. These agents installed three microphones in approximately three and one half hours, after which they left by the same manner in which they had arrived. The agents did not undertake a search or other intrusion on the premises while they installed the microphones.

A second entry onto the premises was effected on December 25, 1973, to remove the microphones. This entry took place at approximately 2:00 a.m. on the morning of the 25th, when one agent entered through an unlocked window and then admitted a second agent by unlocking a locked door. Removal of the three microphones took ap-

proximately thirty minutes, after which the agents left in the same manner as they had entered. No other entries, searches or visits to or of these premises was undertaken by government agents relative to the installation, operation, and removal of the microphones.

The government admits in response to these motions that the original Order and the two subsequent orders/extensions were silent as to how the devices were to be mechanically and physically installed, utilized and removed. Gov't. Supp. Br. at 1. Specifically, the order did not state that the agents could surreptitiously and forcibly break into AAA Store Fixtures, Inc. to install the microphones. The defendants claim that such forcible entry, without prior court authorization, violated the provisions of Title III and the Fourth Amendment to the Constitution. The government contends that although the authorization orders did not specifically authorize the agents to break into AAA Store Fixtures, Inc., to install and remove the microphones, such authority must be implied from an order allowing electronic surveillance. The manner in which electronic surveillance is to be executed should, it is claimed, be left to the sound discretion of the investigative agency authorized to make the interception and should be dictated by the practical and tactical realities which arise in each case.

> Surreptitious entry, by breaking when necessary, is essential if the oral interception provisions of Title III are to be effective. The very nature of the installation of the microphone designed to intercept and 'seize' criminal conversations is such that if prior notice were given it would neutralize the effectiveness of the authorized interception and render it meaningless.

Gov't Br. at 4. However, the issue before this court is not whether surreptitious entry is necessary to effectuate the oral interception provisions of Title III. The issue is whether the decision to install electronic eavesdropping devices on private property by forcible, unconsented, and surreptitious entry should be left to "the sound discretion

of the investigative agency," or whether it should be subjected to prior judicial scrutiny. Thus, in *United States v. Agrusa*, 541 F.2d 690, *reh. en banc denied*, 541 F.2d 704 (8th Cir. 1976), the court upheld the surreptitious installation of a "bugging" device pursuant to a court order which specifically authorized government agents:

'to make secret and, if necessary, forcible entry any time of day or night which is least likely to jeopardize the security of this investigation, upon the premises . . ., in order to install and subsequently remove whatever electronic equipment is necessary to conduct the interception of oral communications in the business office of said premises'.

541 F.2d at 693, but went on to state:

We do not decide what result obtains if the officers act without express court authorization to break and enter (although with court authorization to intercept). We are certain, however, that the resolution becomes much more difficult in that event, and we commend the procedures employed here to law enforcement officials in the future.

541 F.2d at 696 n. 13. This court is faced with just that difficult question that was not before the Eighth Circuit in *Agrusa, supra*; what result obtains if the officers act without express court authorization to break and enter, although they do have court authorization to intercept. In *United States v. Altese*, No. 75 Cr.–341 (E.D.N.Y., Oct. 14, 1976) (Mem.Opin. & Order), the court in upholding the installation of an eavesdropping device by forcible entry onto the premises, noted:

It is this court's position that once probable cause is shown to support the issuance of a court order authorizing electronic surveillance thereby sanctioning the serious intrusion caused by interception, there is implicit in the court's order, concomitant authorization for agents to covertly enter the premises and install the necessary equipment.

Slip Op. at 8(52). However, in *Altese, supra*, the judge who authorized the electronic surveillance had implicitly consented to the surreptitious entry whereby the "bugs" were installed.

Sworn testimony was given by Special Attorney Barlow concerning his conversation with Judge Bartels as to the contemplated method of entry. A record existed of the court's implicit consent to nighttime entry by use of a passkey.

Slip Op. at 10(54). In the instant case, there is no record that the government ever raised with Judge Feikens, who authorized the electronic surveillance, the question of how the microphones were to be installed. It is clear that the authorization orders did not explicitly authorize installation of the devices by forcible entry onto the premises at night.

In *United States v. Dalia*, 426 F.Supp. 862, (D.N.J., 1977), the court found that forcible entry into the premises to install wiretapping devices therein was the safest and most successful method of installing these devices, and, following *Altese, supra*, held that such installation was proper without specific court authorization, upon a showing of probable cause to support the issuance of the court order authorizing the electronic surveillance in the first place. 426 F.Supp at 866. The court found that neither 18 U.S.C. § 2518(4), which specifies the necessary contents of a Title III authorization order, nor Rule 41(c) of the Federal Rules of Criminal Procedure, which indicates that a warrant must identify the property and name or describe the person or place to be searched, requires the court to direct the manner of entry. 426 F.Supp. at 865. In reaching its decision the court specifically declined to follow the District Court for the District of Columbia, which held in *United States v. Ford*, 414 F.Supp. 879 (1976) (Gesell, J.) that an order [2] authorizing implacement of an electronic eavesdropping device by breaking and entering or ruse or strategem was overbroad, and

---

**2.** The wiretap authorization order in the *Ford* case was signed pursuant to provisions of the District of Columbia Code, 23 D.C.Code § 541

*et seq.* (1973), which were based upon the predecessor federal statute at issue in the instant case, 18 U.S.C. § 2510 *et seq.* (1970).

the evidence obtained from such surveillance should be suppressed, where there was no record of the issuing judge's approval of the government's method of installation of the microphones. The court noted that "[t]he authorization given in this instance did not limit the number of entries nor did it specify either the general time or manner of entry. Thus the authority given was far too sweeping." 414 F.Supp. at 884.

◼ Subsequent to the decision in *Dalia, supra,* the Court of Appeals for the District of Columbia Circuit decided the appeal of the District Court's decision in *Ford, supra.* In an exhaustive sixty-seven page opinion the Court of Appeals examined the provision of Title III in light of the Fourth Amendment's prohibitions against unconsented physical entry into private premises absent a warrant issued by a judicial authority and supported by probable cause, *United States v. Ford,* D.C.Cir., 553 F.2d 146 at 152–155 (1977) (Wright, J., for panel of Bazelon, C. J., Wright and Robinson, JJ.) and affirmed the District Court's decision, stating:

> We conclude, after analysis of the underlying policy considerations and well established precedents, that surreptitious physical invasion of a home or protected business premises, when undertaken by police agents for the purpose of installing, maintaining, or removing electronic eavesdropping devices, is, absent a valid consent or sufficiently particularized judicial authorization to enter, a violation of the Fourth Amendment. Thus the surreptitious entry provision in the warrant here was not surplusage. It was a necessary precondition to the Government's unconsented entries into the Shoe Circus and the failure adequately to limit the authorization to enter was a fatal defect. (citations omitted)

At 154–155.

> In light of the privacy interests implicated, the legislative history of Title III, specific findings and provisions in the District of Columbia Code, and the Supreme Court's recognition that exigency factors will rarely, if ever, be present in instances of electronic surveillance, we conclude that the minor incremental burden involved in obtaining proper judicial authorization for the particular invasions of privacy at issue here is not sufficient justification for dispensing with a fundamental Fourth Amendment requirement. When police seek to invade, surreptitiously and without consent, a protected premises to install, maintain, or remove electronic surveillance devices, prior judicial authorization in the form of a valid warrant authorizing that invasion must be obtained. (citations omitted)

At 163–165. It should be remembered that in the *Ford* case, *supra,* the order authorized entry to install and remove the devices by surreptitious means, by ruse or by strategem, 414 F.Supp. at 882, but was overturned because it was overbroad. The orders under review by this court on these motions to suppress do not even provide a general authorization for surreptitious or forcible entry. This court is therefore of the opinion that, applying the rationale of the Court of Appeals for the District of Columbia Circuit in *Ford, supra,* and in light of the reservations expressed by the Court of Appeals for the Eighth Circuit in *Agrusa, supra,* it must grant defendants' motions to suppress. As the District Court in *Ford, supra,* stated:

> The courts have a duty imposed by both the statute and the Constitution. To be sure, it may be necessary from time to time to place 'bugging' devices in private premises, but citizens are entitled to know not only that such 'bugging' is accomplished with court authorization, but also that the authorization is limited to the narrowest precise point necessary to accomplish the law enforcement purpose and that the reasons for the intrusion are included in the public records ultimately available for further court review whenever prosecution results.

414 F.Supp. at 885.

◼ A district court is not bound by the decisions of the court of appeals for another circuit, *Ghandi v. Police Dept. of Detroit,* 74 F.R.D. 115 (E.D.Mich. 1977);

*United States v. Motte,* 251 F.Supp. 601, 605 n. 3 (S.D.N.Y.1966); *McCleod v. Amer. Fed. of Television & Radio Artists, N.Y. Local,* 234 F.Supp. 832 (S.D.N.Y.1964), and the Sixth Circuit Court of Appeals has not yet ruled on the issues presented by these motions to suppress. However, the court is persuaded that it should apply the decision of the Court of Appeals for the District of Columbia Circuit in *Ford, supra,* to the case at bar.

> The Federal Circuit Courts constitute a single system for the administration of justice. When one Circuit Court has fully considered and deliberately decided a question, every suggestion of propriety and fit public action demands that it should be followed by District Courts until modified by the Appellate Court of the Circuit in which such District Court is ·located, or by the Supreme Court of the United States.

*Gustafson v. Wolferman, Inc.,* 73 F.Supp. 186, 192 (W.D.Mo.1947). Therefore, defendant's motions [3] to suppress the evidence obtained from oral conversations intercepted by the use of microphones placed on the premises of AAA Store Fixtures, Inc., at 8624 Medbury, Detroit, Michigan is hereby granted.

IT IS SO ORDERED.

---

**3.** The defendants also raised other independent objections to aspects of the wiretap authorization orders and to the implementation of these orders by the government. These objections were discussed and most of them ruled upon, in a prior Opinion and Order of this court. *United States v. Licavoli, et al.,* No. 75–80597 (E.D. Mich., Aug. 25, 1976) (Mem.Opin. & Order). In that order this court left open for consideration defendants' claim that requests for extensions of an order authorizing interception must supplement the allegations in the original application as to why normal investigation techniques are futile. *Ibid.* at 6–7. The court also indicated that a more complete showing should be made on the record that the government complied with the minimization requirements of 18 U.S.C. § 2518(5) (1970). *Ibid.* at 7–8. Although the evidentiary hearing set by the court for September 8, 1976, *Ibid.* at 4, at which time the parties were to present relevant testimony as to these issues, *Ibid.* at 7, 8, was subsequently cancelled at the request of the parties, they did submit supplemental briefs on these issues. The court will therefore review the pleadings to determine if these questions can be resolved without oral argument, pursuant to Local Court Rule IX (j), or whether these matters should be set down for a hearing.